UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

 In the Matter of M.T. and K.T.,

  ROMAN TERESHCHENKO,

                    Petitioner,

         - against -

  YASAMIN KARIMI,

                  Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No: 23-cv-2006

Assigned Judge:
Honorable Denise Cote

*Oral Argument Requested*

# RESPONDENT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE PETITION
## PURSUANT TO FED. R. CIV. P. 12(b)(1)

KRAUSS SHAKNES
TALLENTIRE & MESSERI LLP

Valentina Shaknes
Justine Stringer
350 Fifth Avenue, Suite 7620
New York, New York 10118
(212) 228-5552
vshaknes@kstmlaw.com
jstringer@kstmlaw.com

***ATTORNEYS FOR RESPONDENT***

Dated: June 20, 2023

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

SUMMARY OF UNDISPUTED FACTS .........................................................2

ARGUMENT ....................................................................................................4

    I.    THE PETITION SHOULD BE DISMISSED BECAUSE THE COURT
         LACKS SUBJECT MATTER JURISDICTION OVER THE DISPUTE .......................4

         A.    THE COURT LACKS SUBJECT MATTER JURISDICTION
              BECAUSE THE PETITION DOES NOT SEEK THE RETURN
              OF THE CHILDREN TO THEIR COUNTRY OF HABITUAL
              RESIDENCE ..................................................................................5

         B.    THE COURT LACKS SUBJECT MATTER JURISDICTION
              BECAUSE THE CHILDREN WERE NOT "WRONGFULLY"
              REMOVED FROM UKRAINE WITHIN THE MEANING OF
              THE HAGUE CONVENTION ..............................................................8

    II.   THE HAGUE CONVENTION DOES NOT REQUIRE THAT THE
         CHILDREN BE RETURNED TO A WAR-TORN COUNTRY .................................10

         A.    RETURNING THE CHILDREN TO A WAR ZONE WOULD
               INDISPUTABLY EXPOSE THEM TO A GRAVE RISK OF
              PHYSICAL AND PSYCHOLOGICAL HARM AND
              OTHERWISE PLACE THEM IN AN INTOLERABLE
              SITUATION ..................................................................................10

         B.    RETURN OF THE CHILDREN WHO WERE GRANTED
               "HUMANITARIAN PAROLE" STATUS BY THE UNITED
              STATES GOVERNMENT IS NOT PERMITTED BY THE
              UNITED STATES' FUNDAMENTAL PRINCIPLES OF THE
              PROTECTION OF HUMAN RIGHTS ..............................................12

CONCLUSION ..............................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Abbott,*
    560 U.S. 5 ...........................................................................................................5, 9

*Aldinger v. Segler,*
    263 F.Supp.2d 284 (D.P.R. 2003).............................................................................13

*Aurecchione v. Schoolman Transp. System, Inc.,*
    426 F.3d 635 (2d Cir. 2005)........................................................................................4

*Chafin v. Chafin,*
    568 U.S. 165 (2013).....................................................................................................5

*Friedrich v. Friedrich,*
    78 F.3d 1060 ..............................................................................................................11

*Golan v. Saada,*
    142 S.Ct. 1880 (2022)........................................................................................5, 6, 11

*Guzzo v. Cristofano,*
    719 F.3d 100 (2d Cir. 2013).........................................................................................5

*Moran v. Kingdom of Saudi Arabia,*
    27 F.3d 169 (5th Cir. 1995) .........................................................................................4

*N.W. v. S.W.,*
    [2023] EWHC 602 ......................................................................................................12

*Peralta v. Garay,*
    284 F.Supp.3d at 863 ...............................................................................................8, 9

*Pielage v. McConnell,*
    2007 WL 9735357 (S.D. Ala. 2007).........................................................................9

*Ramming v. U.S.,*
    281 F.3d 158 (5th Cir. 2001) .......................................................................................4

*Silverman v. Silverman,*
    338 F.3d 886 (8th Cir. 2003) .....................................................................................11

*Toren v. Toren,*
    191 F.3d 23 (1st Cir. 1999)..........................................................................................8

*Walker v. Kitt*,
    900 F.Supp.2d 849 (N.D. Ill. 2012) ....................................................................13

**Statutes**

22 United States Code § 9001(b)(4) ...............................................................................6

International Child Abduction Remedies Act, 42 U.S.C.A. §§ 11601-11610 ...........6, 8

**Rules and Regulations**

51 Federal Regulation 10,494 .........................................................................................1

51 Federal Regulation 10,498 Article 3 .....................................................................9, 10

51 Federal Regulation 10,498 Preamble .........................................................................5

51 Federal Regulation 10,509 Article 13(b) ..................................................................12

51 Federal Regulation 10,511 Article 19 .........................................................................6

Federal Rule of Civil Procedure Rule 12(b)(1) ...........................................................1, 4

**Other Authorities**

Hague Convention Article 20 ...................................................................................12, 13

Hague Convention on Civil Aspects of International Child Abduction,
    Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89,
    *reprinted in* 51 Fed. Reg. 10,494 (Mar. 26, 1986) .......................................... *passim*

Elisa Pérez-Vera, *Explanatory Report on the 1980 Hague Child Abduction
    Convention*, 426, 429 at ¶ 16 (1982) ...........................................................6, 11, 12

United Nations Refugee Agency Report on the Ukraine Situation,
    https://reporting.unhcr.org/operational/situations/ukraine-situation,
    Ukraine situation | Global Focus (unhcr.org) ..........................................................10

Respondent, Yasamin Karimi ("Respondent"), pursuant to Federal Rule of Civil Procedure 12(b)(1), hereby moves to dismiss the Petition filed by Petitioner, Roman Tereshchenko (ECF No. 1), purportedly seeking "return" of the parties' children to the Petitioner under the Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10,494 (Mar. 26, 1986) (the "Hague Convention").

## PRELIMINARY STATEMENT

As explained in detail below, the Petition should be dismissed because the Court lacks subject matter jurisdiction for two independent reasons. *First*, Petitioner does not ask the Court to return the children to their state of habitual residence in Ukraine – the sole purpose of the Hague Convention. Rather, Petitioner seeks that the children's physical custody be transferred *to him* in France, where he is now residing. Thus, the Petition is nothing more than a disguised request for a change of custody, and not a proper petition under the Hague Convention. Because the Court cannot adjudicate custody disputes, it lacks subject matter jurisdiction.

*Second*, Respondent fled Ukraine with the children in accordance with the resolution of the Ukrainian government, which encouraged children and women to leave the country following its invasion by Russia and specifically allowed children to leave regardless of the consent of one or both parents. Because Respondent's departure with the children was authorized, and indeed encouraged, by the Ukrainian government, Petitioner cannot meet his burden of proving that the children's removal from Ukraine was "wrongful" within the meaning of the Hague Convention. The Court therefore also lacks subject matter jurisdiction because Petitioner cannot make the required *prima facie* showing that the Hague Convention applies.

Separately, even if the Court had jurisdiction over this matter because the Petition was properly filed under the Hague Convention and sought the children's return to Ukraine (which it does not), and even if Petitioner could establish that the children's removal from Ukraine was

1

"wrongful" (which he cannot), the Petition should still be dismissed. It is indisputable that Ukraine is in the midst of a bloody war, with all its cities, including the children's home city of Odessa, subjected to regular bombardments. Returning the children to a war zone would inevitably expose them to a grave risk of physical and psychological harm, and would otherwise place them in an intolerable situation – the precise circumstances in which the Hague Convention does not require the return. The return would also be in violation of the children's "Humanitarian Parolee" status specifically granted to them by the United States government under the Uniting for Ukraine program, and thus contrary to the United States' "fundamental principles relating to the protection of human rights and fundamental freedoms."

## SUMMARY OF UNDISPUTED FACTS

Although the parties' accounts of their relationship and the events leading up to Respondent's departure from Ukraine are vastly different, the following facts are not, and reasonably cannot, be in dispute.

The parties were married on April 22, 2017 in Odessa, Ukraine. Petition, p. 2, Paragraph 9. Petitioner was born in 1975 and is 47 years old. Respondent was born in 1993 and is 30 years old. They have two children: M.T., born in March 2017 in Kyiv, Ukraine; and K.T., born in June 2017 in Hollywood, Florida (hereinafter the "Children"). Petition, p. 3, Paragraph 10. The parties and the Children are citizens of Ukraine. K.T. is also citizen of the United States by virtue of her birth.

Shortly after her birth, M.T. was diagnosed with a cytomegalovirus ("CMV"), as a result of which M.T. has suffered severe hearing loss and related health problems, which have required regular extensive medical treatment. Petition, p. 4, Paragraph 16.

The parties were divorced on or about November 16, 2018. Petition, p. 3, Paragraph 11. On May 29, 2019, the parties entered into a custody agreement ("Custody Agreement"), pursuant to which the Children reside with Respondent and Petitioner has parenting time with the Children one

week per month and one month over the summer. Copy of the Custody Agreement is attached as **Exhibit A**.

Within months after the execution of the Custody Agreement, Petitioner sought a modification of the Custody Agreement and Respondent cross-moved for sole custody. Both parties' legal actions are ongoing in Ukraine. Notwithstanding that, the Custody Agreement currently remains in full force and effect and has not been modified by any court.

On February 24, 2022, Russia invaded Ukraine. Following the invasion, the Ukrainian government declared martial law, and passed several resolutions aimed at ensuring prompt evacuation of Ukrainian civilians, especially women and children, given the universally acknowledged imminent risk of harm. One of such resolutions, namely the Resolution of the Cabinet of Ministers of Ukraine on the Rules for Crossing the State Border by Citizens of Ukraine, encouraged children under the age of 16 to leave Ukraine accompanied by a parent or another adult relative *without the notarized consent of the other parent or even both parents*. *See* **Exhibit B.** Prior to this Resolution, written and notarized consent of both parents was required in order for a child to leave Ukraine.

Relying on the Resolution, Respondent and the Children fled Ukraine for Poland in early March 2022, along with millions of other women and children refugees. On July 11, 2022, Respondent and the Children ultimately made their way to the United States, where they were granted "humanitarian parolee" status through the Uniting for Ukraine program instituted by the Biden administration to create a legal entry into the United States for Ukrainian refugees displaced by Russia's military invasion. *See* https://www.uscis.gov/ukraine, copy of the information page is attached as **Exhibit C**. Copy of Respondent's parole granted upon entrance into the United States is annexed as **Exhibit D**. The Children and Respondent have remained in the United States continuously since then.

3

Petitioner also left Ukraine. According to his counsel, Petitioner has been residing in France since May 2022,[1] where he has established a "primary residence." Also, according to Petitioner's counsel, Petitioner is seeking that the Children be "returned" to him in France.

Petitioner filed this Petition on or about March 8, 2023.

## ARGUMENT

### I.   THE PETITION SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE DISPUTE

Pursuant to the Federal Rules of Civil Procedure Rule 12(b)(1), a court is required to dismiss an action if the court does not have subject matter jurisdiction over the dispute. *See Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it "lacks the statutory or constitutional power to adjudicate it."). A motion for lack of subject matter jurisdiction under Rule 12(b)(1) must be considered before any motion on the merits because subject matter jurisdiction is necessary for the determination of the validity of any claim. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1995) (internal citations omitted).

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) (internal citations omitted).

Here, the Court lacks subject matter jurisdiction because (i) the relief requested in the Petition, a transfer of custody to Petitioner, is not permitted under the Hague Convention, and (ii) Respondent's departure from Ukraine with the Children was authorized by the Ukrainian government and was therefore not "wrongful" within the meaning of the Hague Convention.

---

[1] Respondent believes that Petitioner left Ukraine even earlier and before she and the Children did so.

**A. THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE PETITION DOES NOT SEEK THE RETURN OF THE CHILDREN TO THEIR COUNTRY OF HABITUAL RESIDENCE**

It is black letter law that the sole purpose of the Hague Convention is to "*ensure prompt return [of children] to the State of their habitual residence... .*" Hague Convention, Preamble, 51 Fed. Reg. at 10,498 (emphasis added); *Golan v. Saada*, 142 S.Ct. 1880, 1888 (2022) ("[T]he Convention generally requires the 'prompt return' of a child to the child's country of habitual residence when the child has been wrongfully removed or retained in another country."); *Chafin v. Chafin*, 568 U.S. 165, 167 (2013) ("The Hague Convention on the Civil Aspects of International Child Abduction requires the judicial or administrative authority of a Contracting State to order a child returned to her country of habitual residence if the authority finds that the child has been wrongfully removed to or retained in the Contracting State."); *Abbott v. Abbott*, 560 U.S. at 5 ("The Convention provides that a child abducted in violation of "rights of custody" must be returned to the child's country of habitual residence, unless certain exceptions apply."); *Guzzo v. Cristofano*, 719 F.3d 100, 103 (2d Cir. 2013) ("The Hague Convention on the Civil Aspects of International Child Abduction… require[s] courts in the United States to order children returned to their countries of 'habitual residence' if those children have been wrongfully removed to, or retained in, the United States.").

"The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20 (2010). Thus, the underlying merits of any custody disputes are *not* to be determined by courts in Hague Convention cases, because "return is merely 'a provisional remedy' that fixes the forum for custody proceedings." *Golan v. Saada*, 142 S.Ct. at 1888; *see also* Hague Convention, Article 19, 51 Fed. Reg. at 10,511.

As the Explanatory Report for the Hague Convention states:

> The Convention's objects, which appear in Article 1, can be summarized as follows: since one factor characteristic of the situations under consideration consists in the fact that the abductor claims that his action has been rendered lawful by the competent authorities of the State of refuge, one effective way of deterring him would be to deprive his actions of any practical or juridical consequences. *The Convention, in order to bring this about, places at the head of its objectives the restoration of the status quo, by means of 'the prompt return of children wrongfully removed to or retained in any Contracting State.'*
>
> * * *
>
> In a final attempt to clarify the objects of the Convention, it would be advisable to underline the fact that, as is shown particularly in the provisions of article 1, *the Convention does not seek to regulate the problem of the award of custody rights. On this matter, the Convention rests implicitly upon the principle that any debate on the merits of the question, i.e. of custody rights, should take place before the competent authorities in the State where the child had its habitual residence prior to its removal…*

Elisa Pérez-Vera, *Explanatory Report on the 1980 Hague Child Abduction Convention*, 426, 429 at ¶ 16 (1982) (hereinafter the "Perez-Vera Report") (emphasis added).

Consistent with the Convention, the International Child Abduction Remedies Act ("ICARA"), through which the Convention is implemented in the United States, "empowers courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." *Golan v. Saada*, 142 S.Ct. at 1889; 22 U. S. C. §9001(b)(4). It is therefore not surprising that our research did not reveal a single Hague Convention case in the United States in which a child was returned to a country that was not such child's state of habitual residence.

Here, Petitioner alleges, and Respondent does not dispute, that the Children's habitual state of residence was Ukraine. *See* Petition at Paragraph 26, p. 6. Petitioner, however, is not

requesting that the Children be returned to Ukraine, a country that has been ravaged by war.[2] *See* Petition at p. 2, Paragraph 6, and p. 9, VIII(c). Rather, as is clear from his Petition and as has been confirmed by Petitioner's counsel, Petitioner is requesting that the Children's custody be simply transferred *to him.* As noted above, Petitioner's counsel represented that Petitioner has been living in France since May 2022 and that France has been his "primary residence." Petitioner, therefore, conflates the return of the Children to their *state of habitual residence* with a "return" to *him*. *See* Petition, p. 2, Paragraph 6. On its face, his requested relief is not recognized by the Hague Convention and cannot be granted in a Hague Convention proceeding.

By pretending to seek the "return" of the Children to Petitioner, the Petition is simply a custody request masquerading as a Hague Convention petition, and Petitioner attempts to misuse the Hague Convention to gain custody of the Children in violation of the parties' Custody Agreement (annexed to the Petition as Exhibit 3). *See* Paragraphs 2 and 16 of the Custody Agreement, attached as **Exhibit A** (providing that the Children reside with Respondent, while Petitioner has one week of parenting time with the Children each month and one month over the summer break).

Nor can the Children be "returned" to France where Petitioner is now residing. First, the Children have no connection to France whatsoever, and therefore it cannot be disputed that France is not their country of habitual residence. It is self-evident that the Children cannot be "returned" to a country they have never even visited. In fact, as between France and the United States, the Children at this time have far more connection to the United States, where they have been residing for almost a year and where they are receiving education and medical care and have made friends.

---

[2] It should be noted that Petitioner apparently has no plans to return to Ukraine because he would be drafted into mandatory military service there, in accordance with the decree of President Zelensky, conscripting all men between the ages of 18 and 60.

Accordingly, the Petition is simply a request to determine custody, and does not state a claim arising under the Hague Convention. Because this Court has no jurisdiction to adjudicate custody disputes, the Petition should be dismissed for lack of subject matter jurisdiction.

### B.  THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE CHILDREN WERE NOT "WRONGFULLY" REMOVED FROM UKRAINE WITHIN THE MEANING OF THE HAGUE CONVENTION

In cases arising under the Hague Convention, removal or retention of children from their country of habitual residence must be "wrongful" in order for subject matter jurisdiction to be conferred:

> The Convention requires that a court order the return of a wrongfully removed or retained child. To qualify for relief under the Convention, a petitioner seeking return of a child must establish by a preponderance of the evidence that the child was wrongfully removed or retained within the meaning of the Convention. *Thus, federal subject matter jurisdiction is invoked only if a removal or retention is "wrongful."*

*Peralta v. Garay*, 284 F.Supp.3d 858, 861 (S.D. Tex. 2018) (emphasis added).

Courts routinely dismiss cases for lack of subject matter jurisdiction where petitioner is unable to establish that the children were wrongfully removed or retained. *See, e.g. Toren v. Toren*, 191 F.3d 23, 29-30 (1st Cir. 1999) ("We conclude that the father has failed to allege facts sufficient to state a claim for retention or removal, let alone "wrongful" retention or removal…. Absent a threshold showing that there has been a retention or removal, the district court lacked jurisdiction to grant or deny the father's petition. We therefore vacate the district court opinion and dismiss for lack of jurisdiction."); *see also Pielage v. McConnell*, 2007 WL 9735357, *4 (S.D. Ala. 2007) ("[T]his Court finds that it lacks jurisdiction to hear the Petitioner's claim brought pursuant to the International Child Abduction Remedies Act, 42 U.S.C.A. §§ 11601-11610, because there has been no 'wrongful removal or retention' of a child as required by the Act."); *Peralta v. Garay*, 284 F.Supp.3d at 863 ("Petitioner has therefore failed to meet her burden of showing that GM's retention is wrongful.

Accordingly, the Court lacks subject matter jurisdiction over Petitioner's lawsuit, and Respondent's motion to dismiss is granted.").

Pursuant to Article 3 of the Hague Convention, the removal or retention of a child is *"wrongful"* where:

> a. it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, *under the law of the State in which the child was habitually resident immediately before the removal or retention*; and
>
> b. at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, Article 3, 51 Fed. Reg. at 10,498 (emphasis added)*; see also Abbott v. Abbott*, 560 U.S. at 4 ("[The Convention] provides that such removal or retention ... is to be considered wrongful where it is in breach of rights of custody attributed to a person ... under the law of the State in which the child was [theretofore] habitually resident…and where those rights [had been] actually exercised ... or would have been so exercised but for the removal or retention.") (internal citations omitted).

Here, Petitioner cannot prove that the Children were wrongfully removed by Respondent from Ukraine. Following Russia's unprovoked military invasion of Ukraine on February 24, 2022, the Ukrainian government declared martial law and encouraged women with young children to flee Ukraine to save themselves. To facilitate that, the Ukrainian government enacted a resolution, the *Resolution of the Cabinet of Ministers of Ukraine on the Rules for Crossing the State Border by Citizens of Ukraine*, allowing children under 16 years of age to leave Ukraine without the notarized consent of a parent. *See* **Exhibit B.**

Specifically, Clause 4 of the *Rules for Crossing the State Border by Citizens of Ukraine* was amended on March 1, 2022, as follows:

> Departure of children under 16 years of age, accompanied by one of the parents,

> grandparents, adult brothers, sisters, stepmothers, stepfather or other persons authorized by one of the parents in a written statement certified by the guardianship authority, is carried out *without the notarized consent of the other parent* and in the presence of a passport of a citizen of Ukraine or a child's birth certificate (in the absence of a passport of a citizen of Ukraine) / documents containing personal information recognized by the State Border Guard Service. (emphasis added)

Translated text of the Resolution is annexed hereto as **Exhibit B**; *see also* **Exhibit E**, a document prepared by Respondent's attorney in Ukraine discussing the evolution and impact of the Resolution.

Relying on the Resolution, Respondent fled Ukraine with the Children shortly after the invasion, along with millions of other women and children refugees. *See* United Nations Refugee Agency Report on the Ukraine Situation, https://reporting.unhcr.org/operational/situations/ukraine-situation, Ukraine situation | Global Focus (unhcr.org), attached as **Exhibit F** (stating that 7.2 Million of refugees have been recorded in Europe alone, over 90% of them women and children).

Because Respondent and the Children fled Ukraine under the directive of the Ukrainian government, the removal of the Children from Ukraine was clearly not in violation of Petitioner's custody rights under the laws of Ukraine. Thus, Petitioner cannot meet his *prima facie* burden of establishing a *wrongful* removal, and the Petition should be dismissed for lack of subject matter jurisdiction.

**II.     THE HAGUE CONVENTION DOES NOT REQUIRE THAT THE CHILDREN BE RETURNED TO A WAR-TORN COUNTRY**

    **A. RETURNING THE CHILDREN TO A WAR ZONE WOULD INDISPUTABLY EXPOSE THEM TO A GRAVE RISK OF PHYSICAL AND PSYCHOLOGICAL HARM AND OTHERWISE PLACE THEM IN AN INTOLERABLE SITUATION**

Even if the Petition were properly filed under the Hague Convention and sought the Children's return to Ukraine (which it does not), and even if Petitioner met his *prima facie* burden of showing that the Children were wrongfully removed (which again, he cannot), the Petition should still be dismissed because the Hague Convention does not require the Court to return the Children to a war-torn country.

10

As the Supreme Court recently noted, "[] the Convention sets as a primary goal the safety of the child." *Golan v. Saada*, 142 S.Ct. at 1896. Thus, Article 13(b) of the Hague Convention, commonly referred to as the grave risk of harm defense, allows the Court not to return the children to their state of habitual residence if doing so would expose the children to physical or otherwise place them in an intolerable situation. Hague Convention, Article 13(b), 51 Fed. Reg. at 10,509.

The Perez-Vera Report explains the drafter's intent as it relates to the grave risk exception:

> [P]aragraphs 1b and 2 of the said Article 13 contain exceptions which clearly derive from a consideration of the interests of the child… Thus, the interest of the child in not being removed from its habitual residence without sufficient guarantees of its stability in the new environment, gives way before the primary interest of any person in not being exposed to physical or psychological danger or being placed in an intolerable situation.

Perez-Vera Report, at 433, Paragraph 29.

Courts recognize that sending a child to a "zone of war, famine, or disease" poses a grave risk of harm under the Hague Convention, thus creating an "intolerable situation" for the child. *See, e.g. Friedrich v. Friedrich*, 78 F.3d 1060, 1069 ("[T]here is a grave risk of harm when return of the child puts the child in imminent danger *prior* to the resolution of the custody dispute—*e.g.,* returning the child to a zone of war, famine, or disease."); *see also Silverman v. Silverman*, 338 F.3d 886, 900 (8th Cir. 2003) ("There are two types of grave risk that are appropriate under Article 13(b): sending a child to a "zone of war, famine, or disease," or in cases of serious abuse or neglect.") (internal citations omitted).

A recent Hague Convention decision from the England and Wales High Court (Family Division) is particularly apt. In that case, the court declined to send the child back to Ukraine due to the ongoing war with Russia, explaining that:

> The court must consider whether the allegations are of "sufficient detail and substance to give rise to the grave risk." I find that they

undoubtedly are. There is a wealth of convincing and independent evidence from multiple sources all pointing in precisely the same direction. Taken together, the Advisories from two governments and several reputable news outlets, paint the unmistakable picture of grave risk in Kyiv presently. I must consider whether the evidence enables me to "confidently discount the possibility [of grave risk]." It does not. The grave risk remains.

*N.W. v. S.W.*, [2023] EWHC 602 (Fam) (decision annexed hereto as **Exhibit G**).

As the Perez-Vera Report makes clear, the drafters' intent in including the exceptions in the Hague Convention was to ensure that the best interests of children are considered in application of the Convention. *See* Perez-Vera Report, at 433, Paragraph 29. The return of young children to a war-torn country is clearly against their best interests and the precise scenario the drafters were likely considering when drafting the exceptions to the Hague Convention.

Here, it is indisputable that all major cities in Ukraine, including the Children's home city of Odessa, are continuously subjected to regular, virtually daily, missile and drone bombing attacks. Petitioner himself clearly realizes the risk, which is why he has made France his "primary residence," and apparently has no intention of returning to Ukraine while the war is raging. Accordingly, ordering the Children's return to Ukraine at this time would be antithetical to the language and the spirit of the Hague Convention.

**B. RETURN OF THE CHILDREN WHO WERE GRANTED "HUMANITARIAN PAROLE" STATUS BY THE UNITED STATES GOVERNMENT IS NOT PERMITTED BY THE UNITED STATES' FUNDAMENTAL PRINCIPLES OF THE PROTECTION OF HUMAN RIGHTS.**

Article 20 of the Hague Convention states that a return of children may be "refused when this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." Hague Convention, Art. 20.

Courts have held that the Article 20 defense can be invoked only "on the rare occasion that return of a child would utterly shock the conscience of the court or offend all notions of due process."

*Walker v. Kitt*, 900 F.Supp.2d 849, 862-63 (N.D. Ill. 2012) (internal citations omitted); *see also Aldinger v. Segler*, 263 F.Supp.2d 284, 290 (D.P.R. 2003) ("Article 20 ... is directed to concerns about harms arising from the child's return to a particular country. Article 20 envisioned a limited situation where human rights concerns, most likely defined within the parameters of other international agreements, would prohibit return.") (internal citations omitted).

Here, recognizing the humanitarian crisis caused by Russia's attack of Ukraine, the United States government created a special program for Ukrainian refugees, called Uniting for Ukraine. Respondent and the Children were admitted into the United States through this program, under which they were designated "humanitarian parolees." This status is typically provided to "[i]ndividuals who are outside of the United States…based on urgent humanitarian or significant public benefit reasons." *See* https://www.uscis.gov/humanitarian/humanitarian_parole. Through the Uniting for Ukraine program, as Ukrainian citizens fleeing Russia's invasion of Ukraine, Respondent and the Children are permitted to stay in the United States temporarily for a two-year period of parole, which can then be extended. *See* **Exhibit C**. Under these circumstances, when even the United States government created a special program to protect and assist these people, ordering the Children's return to Ukraine would be entirely inconsistent with the fundamental principles of the United States.

## **CONCLUSION**

For the aforementioned reasons, Respondent respectfully requests that the Court dismiss Petitioner's Petition for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

Dated: June 20, 2023
          New York, New York

                                                        Respectfully submitted,

                                                        Valentina Shaknes
                                                        Justine Stringer
                                                        Krauss Shaknes Tallentire & Messeri LLP
                                                        350 Fifth Avenue, Suite 7620
                                                        New York, New York 10118
                                                        (212) 228-5552
                                                        vshaknes@kstmlaw.com
                                                        jstringer@kstmlaw.com