**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

In the Matter of M.T. and K.T.,        )
                                   )
ROMAN TERESHCHENKO,       )
                                   )
               Petitioner,      )
                                   )
     vs.                        )    No. 23-cv-2006-DLC
                                   )
YASAMIN KARIMI,            )
                                   )
            Respondent.    )
_____)

 

**PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION TO DISMISS THE PETITION PURSUANT TO FED.R.CIV.P. 12(b)(1)**

GREEN KAMINER MIN & ROCKMORE LLP

Richard Min
Michael Banuchis
420 Lexington Ave. Ste. 2821
New York, New York 10170
(212)684-6100
rmin@gkmrlaw.com
mbanuchis@gkmrlaw.com

***ATTORNEYS FOR PETITIONER***

Dated June 23, 2023

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

COUNTERSTATEMENT OF FACTS ...................................................................................3

LEGAL STANDARD............................................................................................................4

ARGUMENT ......................................................................................................................5

    I.     THE COURT HAS SUBJECT MATTER JURISDICTION ..................................5

         a.  Children Are Not Required to be Returned to their Habitual Residence.....5

         b.  Whether the Children Were Wrongfully Removed
             Goes to the Merits of the Petition ................................................................7

    II.    RESPONDENT WRONGFULLY REMOVED THE CHILDREN IN
         VIOLATION OF PETITIONER'S RIGHTS OF CUSTODY .............................10

    III.   RESPONDENT'S EXCEPTIONS ARE NOT A BASIS FOR A MOTION TO
         DISMISS AND CANNOT BE SUSTAINED ......................................................15

CONCLUSION....................................................................................................................19

## **TABLE OF AUTHORITIES**

**Cases**

*Abbott v. Abbott*
    560 U.S. 1 (2010) ................................................................................... 6, 10-14

*Agoliati v. Block 865 Lot 300 LLC*, No. 22-51
    2023 WL 405769 (2d Cir. Jan. 26, 2023) ...........................................................4

*In Re B (A Child)*
    [2020] EWCA Civ. 1187 .................................................................................7

*Chechel v. Brignol*, No. 510-CV-164-OC-10GRJ
    2010 WL 2510391 (M.D. Fla. June 21, 2010) .................................................1

*Cruvinel v. Cruvinel*, No. 19-CV-4237 (LDH) (SIL)
    2022 WL 757955 (E.D.N.Y. Jan. 10, 2022) ....................................................11

*Espinal v. Sephora USA, Inc.*, No. 22-CV-03034-PAE-GWG
    2022 WL 16973328 (S.D.N.Y. Nov. 16, 2022), *report and recommendation adopted*,
    2023 WL 2136392 (S.D.N.Y. Feb. 21, 2023) ............................................. 4-5

*Galaviz v. Reyes*, No. EP-21-00286-FM
    2022 WL 620702 (W.D. Tex. Feb. 22, 2022) .................................................17

*Gitter v. Gitter*
    396 F.3d 124 (2d Cir. 2005) ........................................................................5, 11

*Golan v. Saada*
    142 S. Ct. 1880 (2022) .................................................................................17

*Hazbun Escaf v. Rodriquez*, 191 F. Supp. 2d 685 (E.D. Va.), *aff'd sub nom. Escaf v. Rodriguez*,
    52 F. App'x 207 (4th Cir. 2002) .............................................................. 15-16

*J.S. ex rel. N.S. v. Attica Cent. Sch.*
    386 F.3d 107 (2d Cir. 2004) ........................................................................ 5

*Lopez Sanchez v. RGL*
    761 F3d 495 (5th Cir 2014) ..................................................................... 17-18

*Makarova v. United States*
    201 F3d 110 (2d Cir. 2000)........................................................................... 4

*Monasky v. Taglieri*
    140 S. Ct. 719 (2020) ..................................................................................9

*NW v. SW*
    [2023] EWHC 602 (Fam) ..........................................................................16

*Osorio v. Barboza*, No. SA-15-CV-00988
    2016 WL 10587205 (W.D. Tex. Mar. 28, 2016) ......................................7

*Ozaltin v. Ozaltin*
    708 F.3d 355 (2d Cir. 2013) ...............................................................13-15

*Peralta v. Garay*
    284 F.Supp.3d 858 (S.D. Tex. 2018) ....................................................9-10

*Pielage v. McConnell*, No. CV 06-0845-KD-B
    2007 WL 9735357 (S.D. Ala. Feb. 14, 2007) .........................................8-9

*Q v. R*
    [2022] EWHC 2961 (Fam) ........................................................................16

*Salame v. Tescari*
    29 F.4th 763 (6th Cir. 2022) ...............................................................18-19

*Sanchez v. Sanchez*, No. SA-12-CA-568-XR
    2012 WL 5373461 (W.D. Tex. Oct. 30, 2012), *vacated and remanded sub nom. Sanchez v. R.G.L.*, 761 F.3d 495 (5th Cir. 2014) ...............................................17-18

*Shealy v. Shealy*
    295 F.3d 1117 (10th Cir. 2002) ...............................................................14

*Sumitomo Shoji America, Inc. v. Avagliano*
    457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982) .............................6

*Toren v. Toren*
    191 F.3d 23 (1st Cir. 1999) .......................................................................8

## Statutes & Rules

§ 9001(b)(3)(B) ..............................................................................................7

Federal Rule of Civil Procedure 12(b)(1) ...............................................1, 4

**Other Authorities**

3 Conférence de La Haye de droit international privé, Actes et Documents de la Quatorzième session, Enlèvement d'enfants 426 (1982) ..............................................................5-6, 12, 14-15

51 Fed. Reg. 10494 (Mar. 26, 1986) ............................................................................... 1, *passim*

51 Fed. Reg. 10503 (1986) ................................................................................................6

Petitioner Roman Tereschcenko respectfully submits this brief in opposition to Respondent Yasamin Karimi's motion (ECF No. 36) brought pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the Petition (ECF No. 1), seeking return of the parties' children to the Petitioner under the Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, reprinted in 51 Fed. Reg. 10,494 (Mar. 26, 1986) (the "Hague Convention").

## PRELIMINARY STATEMENT

Respondent's Motion to Dismiss is an effort to obstruct the rightful return of the Children (K.T., age 7 and M.T. age 6) to Petitioner. Respondent wrongfully removed the Children from Ukraine sometime around April 2022. Since that time, in violation of Ukrainian law, she has kept the children hidden from the Father. After Petitioner was able to locate Respondent, she tried to evade service and prolong her wrongful retention. This case should proceed to an evidentiary hearing so that the Children can be rightfully returned to Petitioner.

This Court has subject matter jurisdiction over the dispute. Ukraine and the U.S. are signatories to the treaty (*see Chechel v. Brignol*, No. 510-CV-164-OC-10GRJ, 2010 WL 2510391 (M.D. Fla. June 21, 2010)) and it is undisputed that the Children are Ukrainian habitual residents. The Hague Convention does not, however, require a child to be returned to their habitual residence, and the viability of a Hague Convention claim does not depend on where a child is to be returned. The U.S. State Department's (the U.S. designated Central Authority) guidance and foreign case law establishes that a "return" under the Convention can be non-country specific so long as a petitioner is able to establish a *prima facie* case and a respondent is not able to prove one of the limited exceptions.

1

Respondent confuses the issue of subject matter jurisdiction with the merits of the Petition. Whether her removal and retention of the Children is wrongful under the Hague Convention is a factual and legal issue for the Court to decide and has nothing to do with subject matter jurisdiction. Regardless of this conflation, Respondent's unilateral relocation from Ukraine to the U.S. was wrongful within the meaning of the Hague Convention because it violated his rights of custody under Ukrainian law. Even assuming *argundo* that Respondent was technically legally permitted to leave Ukraine, her removal violated Petitioner's rights of custody within the meaning of the Hague Convention and was therefore *per se* wrongful.

Respondent's contention that it poses a grave risk of harm to return the Children to Ukraine again goes to the merits of the Petition and is more akin to a request for summary judgment. It is not disputed that, in the first instance, Petitioner does not seek an order directing the Children back to Ukraine. Rather, Petitioner requests that the Court return them to Petitioner in France where he currently resides (but if directed consents to the Children's return to an area in Ukraine this Court deems safe, *e.g.*, Western Ukraine close to the border of Poland).  Respondent's position, taken to its logical end, would suggest that any parent is permitted to relocate a Ukrainian child unilaterally and permanently to the U.S. over the other parent's objection while the left behind parent has no legal recourse.  According to Respondent's theory of the case, if the left behind parent were to remain in Ukraine, return would be impermissible due to grave risk of harm resulting from the ongoing war and if the left behind parent were to leave Ukraine, then courts would lack subject matter jurisdiction. That proposition cannot stand and subverts the purpose of the Hague Convention, which is to address the unilateral movement of children across state borders. Because Respondent has wrongfully removed and is wrongfully retaining the children in New York they should be returned to Petitioner forthwith.

Given that a child is not required to be returned to their habitual residence, the remainder of Respondent's arguments go to the merits of the Petition or the raised exceptions. Accordingly, Respondent's motion to dismiss should be denied or alternatively held in abeyance until after an evidentiary hearing is held.  Petitioner's *prima facie* case and Respondent's raised exceptions are factual in nature and there are material issues of fact yet to be determined.

## **COUNTERSTATEMENT OF FACTS**

The parties, who are both Ukrainian citizens, were married on April 22, 2017 and divorced on November 16, 2018 by the decision of the Dnipro District Court of the city of Kyiv (civil case No. 755/12350/18).  The parties have two children who are subject to the instant petition, K.T. (born in 2016), and M.T. (born in 2017) (collectively the "Children").

On May 29, 2019, the parties entered into a parenting agreement (the "Parenting Agreement"), which did not disturb the parties' joint parental rights over the children. While the children were to live with Respondent, Petitioner retained the right to freely visit and communicate with the Children and to participate in their upbringing.

Starting from January 1, 2019, Respondent frequently left Ukraine for long periods of time to foreign countries. Her actions prompted Petitioner to file two criminal complaints in July 2020 and April 2021. In order to safeguard the Children, on November 2020, Petitioner petitioned the Primorsky District Court in Odesa, Ukraine to request that the Children reside with him. That case is still pending.

Petitioner also made a request to the Guardianship Body of the Prymorska District Administration at the Odesa City Council ("Guardianship Body") to determine where the Children should reside. On October 11, 2021, the Guardianship Body issued a decision determining that the Children should reside with Petitioner.

3

During Respondent's long period of absences, Petitioner was caring for the Children and the Children primarily resided with him from January 2019 through November 2021. For approximately seven months between April 2021 and November 2021, Respondent was not present in Ukraine and the Children lived with him exclusively.

On November 22, 2021, Respondent took the Children on a visit after her return to Ukraine. She failed to return the Children as agreed the following day and then disappeared with the Children leaving Petitioner with minimal contact thereafter.

Respondent contacted Petitioner on or around February 25, 2022 at the outset of the Ukrainian conflict with Russia. Petitioner consented for Respondent to bring the Children to Dubai where he would meet them. Petitioner provided Respondent with travel documents for the Children for this purpose.

Respondent cut off all contact with Petitioner after receiving the Children's documents and did not bring them to Dubai. Upon information and belief, Respondent took the Children to Spain, then to Turkey, and finally to New York. When the Children were located in New York, Petitioner filed the instant Petition.

## **LEGAL STANDARD**

Under Rule 12(b)(1), a claim must be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 WL 405769, at *1 (2d Cir. Jan. 26, 2023) (quoting *Makarova*, 201 F.3d at 114). "When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based exclusively on the face of the complaint, the district court must

take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Espinal v. Sephora USA, Inc*., No. 22-CV-03034-PAE-GWG, 2022 WL 16973328, at *1 (S.D.N.Y. Nov. 16, 2022) (quotation marks and citation omitted), *report and recommendation adopted,* 2023 WL 2136392 (S.D.N.Y. Feb. 21, 2023). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch*., 386 F.3d 107, 110 (2d Cir. 2004).

## ARGUMENT

## I.   THE COURT HAS SUBJECT MATTER JURISDICTION

### A.   Children Are Not Required to be Returned to their Habitual Residence

Contrary to Respondent's claim, the sole purpose of the Hague Convention is not, as an immutable rule, to return a child to their habitual residence. It is uncontroversial that return to a third country is permitted under the Convention. That is because one of the purposes of the Hague Convention is to make certain that the child's status quo prior to the wrongful removal/retention is not disrupted. This purpose was recognized by the official reporter of the Convention[1] in her explanation that the Convention does not require the child to be returned to the ***State*** from which it was removed, but to the ***person*** from whom the child was taken:

> The Convention did not accept a proposal to the effect that the return of the child should always be to the State of its habitual residence before removal. . . .we must not forget that it is the right of children not to be removed from a particular environment which sometimes is a basically family one, which the fight against international child abductions seeks to protect.  Now, when the applicant no longer

---

[1]   The Second Circuit has noted that the Explanatory Report of the Convention by Elisa Pérez-Vera, in 3 Conférence de La Haye de droit international privé, Actes et Documents de la Quatorzième session, Enlèvement d'enfants 426, 428 ¶ 11 (1982) ("Pérez-Vera Report"), is the official report of the Convention and can be relied on to interpret the Convention. *Gitter v. Gitter*, 396 F.3d 124, 131 (2d Cir. 2005) (noting that in addition to other tools of interpretation "we have the benefit of the Perez-Vera Report, the official history and commentary on the Convention.").

lives in what was the State of the child's habitual residence prior to the removal, the return of the child to that State might cause practical problems which would be difficult to resolve. The Convention's silence on this matter must therefore be understood as allowing the authorities of the State of refuge to return the child directly to the applicant, regardless of the latter's present place of residence."

Pérez-Vera Report ¶ 110.

This interpretation is echoed by the U.S. State Department, which acts as the U.S. Central Authority in Hague cases, in its Text and Legal Analysis, 51 Fed.Reg. 10503 (1986) (hereinafter Convention Analysis). The Convention Analysis was cited by the U.S. Supreme Court in *Abbott v. Abbott*, 560 U.S. 1, 24 (2010) as an authority on the Hague Convention. In what should be a dispositive statement regarding this issue, the Convention Analysis states:

> Assuming the court has determined that the removal or retention of the child was wrongful within the meaning of the Convention and that no exceptions to the return obligation have been satisfactorily established by the respondent, Article 12 provides that "the authority concerned shall order the return of the child forthwith." ***The Convention does not technically require that the child be returned to his or her State of habitual residence, although in the classic abduction case this will occur. If the petitioner has moved from the child's State of habitual residence the child will be returned to the petitioner, not the State of habitual residence.***

Convention Analysis, 51 FR 10494-01 (emphasis added). The Executive Branch's interpretation of a treaty "is entitled to great weight." *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 185 (1982).

Article 12 of the Hague Convention makes no requirement that a return be to the country of habitual residence:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.
> The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

6

> Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

In the instant proceeding, admittedly returning the Children to Ukraine is not an ideal outcome. However, the prescient drafters of the Hague Convention did not want to foreclose a left behind parent from relief solely because they had moved post-abduction.

Requesting that children be returned to a country other than the habitual residence is not a common request in the United States and this may indeed be the first case of its kind. That does not invalidate the analysis above and/or that the relief sought is permitted by the treaty. To that point, Respondent did not cite a single case in support of her argument that a return to a third country is prohibited.

The ability for children to be returned to a country other than their habitual residence finds further support in foreign case law. In *Re B (A Child)*, [2020] EWCA Civ. 1187, the UK Court of Appeal addressed the question of whether a child can be turned only to their habitual residence or "whether the 1980 Convention permits a court to order that a child be returned to a third state." *Id*. at ¶ 103.  The court found that "there is power under the 1980 Convention to order that a child be returned to a third state." *Id. at* ¶ 104.  The court stated that a restriction to only return a child to its country of habitual residence "would not promote the objectives of the 1980 Convention." *Id.* at ¶ 110.  The U.S. Congress has directed that "uniform international interpretation of the Convention" is one of the Convention's intentions. *See* § 9001(b)(3)(B).

B.    Whether the Children Were Wrongfully Removed Goes to the Merits of the Petition

Respondent's argument that the Court lacks subject matter jurisdiction because the children were not wrongfully removed or retained is likewise misplaced in a motion to dismiss and goes to the merits of the petition. *See Osorio v. Barboza*, No. SA-15-CV-00988, 2016 WL 10587205, at *3 (W.D. Tex. Mar. 28, 2016). Here, the issue of whether the removal of the children from Ukraine

7

and their retention in the U.S. was wrongful is an issue of fact for the Court to decide after an evidentiary hearing.

The cases relied upon by Respondent are easily and readily distinguishable from the instant one. They each involve fact patterns drastically different from the facts here and the typical Hague cases where one parent either unilaterally absconds with a child or overstays an agreed upon stay abroad. The courts in the cases cited dismissed the petitions after finding that the petitioner could not make out a *prima facie case*. Two of the courts were able to do that on the pleadings alone while one required a hearing as detailed below. In the instant case Petitioner has certainly alleged facts necessary to sustain a *prima facie* case in the petition.

In *Toren v. Toren*, 191 F.3d 23 (1st Cir. 1999), the parents, under an Israeli divorce agreement, agreed for the children to move from Israel to Massachusetts with the mother for a period of time and then to return to Israel. The mother filed to modify the custody arrangement in Massachusetts before the children were to return to Israel. The father filed a Hague petition alleging what amounted to an anticipatory breach of their agreement. The First Circuit stated the court had no jurisdiction because the "Hague Convention only provides a cause of action to petitioners who can establish actual retention" (*id*. at 28) and "neither the mother nor any court has denied the father access to his children." *Id*. at 29. Here the exact opposite is true. Respondent is unilaterally retaining the children in the U.S. over Petitioner's objection and denying him access and contact with the Children.

*Pielage v. McConnell*, No. CV 06-0845-KD-B, 2007 WL 9735357 (S.D. Ala. Feb. 14, 2007) is another case where a parent was not suffering a breach of custodial rights. The petitioner mother was from the Netherlands. She became romantically involved with the respondent father after a trip to Alabama, got pregnant, made plans to marry, and traveled back to the Netherlands.

While she was abroad the father became involved with another woman. The mother filed for child support and the father initiated paternity proceedings in Alabama. When the mother came back to Alabama with the child for a DNA test, the father obtained a temporary *ne exeat* order from the local Alabama court preventing her from leaving until the paternity and custody proceeding was over, but the mother retained custody of the child. The mother filed a Hague petition seeking to return to the Netherlands with the child under the theory that, by obtaining the *ne exeat* order, the father was wrongfully retaining the child in Alabama. The district court disagreed because the mother was "not suffering any 'breach of rights of custody' as contemplated by the Hague Convention." *Id*. at *3. The facts of this case are anomalous for a Hague proceeding and not applicable to the instant situation, where the Children were living in Ukraine with the Petitioner and Respondent unilaterally removed and retained the Children to the United States over Petitioner's objection. In the instant case Petitioner is suffering a breach of his rights of custody because Respondent has unilaterally relocated the Children and cut off his contact with them.

*Peralta v. Garay*, 284 F. Supp. 3d 858, 860 (S.D. Tex. 2018) similarly does not support Respondent's motion to dismiss arguments. The *Peralta* court held a full evidentiary hearing with five witnesses before issuing a decision. The parents and child were from El Salvador and tried to illegally move to the U.S. separately but were both eventually detained. The mother, who was with the subject child, gave temporary authorization for U.S. immigration officials to release the child to her sister in the U.S after she was detained. With the parents both back in El Salvador and the child in the U.S. with the maternal aunt, the mother filed a Hague petition for return to El Salvador. In an outlier decision, the district court found that the child's habitual residence was now the U.S. due to the parent's shared intent to relocate under a legal standard which has since been superseded by the U. S. Supreme Court in *Monasky v. Taglieri*, 140 S. Ct. 719 (2020). The *Peralta* petitioner

could not make out a *prima facie* case because the children's habitual residence was not El Salvador and her case was dismissed. This case is not analogous to the instant one in any material aspect.

Turning to the instant case, Respondent makes the conclusory argument that Petitioner cannot prove that the Children were wrongfully removed from Ukraine due to the conflict with Russia. Respondent relies heavily on a particular Ukrainian resolution which she alleges gave her the unilateral right to remove the Children from Ukraine. What rights the resolution did or did not confer upon these parties is clearly a factual issue involving Ukrainian law which requires expert testimony. Even if Respondent was permitted to leave Ukraine, it is an astonishing leap to draw the conclusion that she also had unfettered permission to move anywhere unilaterally and permanently with the Children over Petitioner's objection. Petitioner's legal expert will establish, however, that Respondent's removal and retention of the Children was wrongful and in breach of Petitioner's rights of custody under Ukrainian law.

Conspicuously, Respondent's argument also does not address the wrongful retention of the children in New York even if, assuming *arguendo*, she was legally permitted to leave Ukraine with the children under the auspices of a directive from the Ukrainian government. The question of whether, even if she were permitted to leave Ukraine, she was also permitted to retain the Children in New York therefore remains unanswered by Respondent.

## II.    RESPONDENT WRONGFULLY REMOVED THE CHILDREN IN VIOLATION OF PETITIONER'S RIGHTS OF CUSTODY

The Hague Convention provides that:

 [t]he removal or the retention of the child is to be considered wrongful where (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time

of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Abbott,* 560 U.S. at 8 (quoting Hague Convention, art. 3).  Therefore, to establish a *prima facie* case of wrongful retention under the Hague Convention, a petitioner must demonstrate by a preponderance of the evidence that:

> (1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention.

*Gitter,* 396 F.3d at 130–31. Once a petitioner establishes a *prima facie* case, the child must be returned unless "one of the affirmative defenses set forth in Articles 12, 13, and 20 applies." *Cruvinel v. Cruvinel*, No. 19-CV-4237 (LDH) (SIL), 2022 WL 757955, at *5 (E.D.N.Y. Jan. 10, 2022).

Habitual residence is not at issue here as the parties agree it is Ukraine. Respondent's unilateral removal of the children from Ukraine and retention of them in New York is undoubtedly wrongful under the Hague Convention. Petitioner's expert report, a copy of which is annexed hereto as **Exhibit 1**, clearly states that the parties have joint parental authority to determine the upbringing of the Children which includes where they live. Ms. Voinarovska states that neither the 2019 Parenting Agreement nor the 2021 Decision of the Guardianship Body disturb those rights and only determines with whom the Children should reside.

Moreover, even after Ukraine relaxed its rules for crossing the border with children to permit a parent to take a child across its borders without notarized consent or other documentation, the parties' joint rights over the upbringing of the Children were never vacated or abrogated.  The change in policy instituted procedural changes to facilitate crossing the Ukrainian border but did <u>not</u> affect the parties' substantive rights.

11

If, as Respondent argues, she had the unilateral right to remove the Children from Ukraine, it would then follow that Petitioner would have also had that right. Taking Respondent's argument at face value, either parent would be permitted to remove and relocate with the Children if given the opportunity over the objections of the other parent. This is an untenable position with faulty internal logic resting on Ukrainian custody law essentially being *de facto* suspended due to the war. Respondent may not have been required to show specific documents at the border in order to cross, but she still needs Petitioner's consent to relocate the Children permanently. If Respondent contends that her relocation to New York is not permanent, then she is then wrongful retaining the Children.

Rights of custody for the purposes of the Hague Convention includes a broad set of rights, including the "rights relating to the care of the person of the child and in particular, the right to determine the child's country of residence."  Convention, art. 5(a).  In *Abbott*, *supra*, a *ne exeat* right was determined to be a right of custody under the Hague Convention.  A *ne exeat* right confers upon a non-custodial parent the right to provide permission for the removal of a child from the country. This is akin to the right that Respondent here argues was suspended after Ukraine changed its border policy. Even if Ukraine suspended Petitioner's *ne exeat* right, he still possessed other custody rights under the Hague Convention which Respondent breached.

The Supreme Court stated in *Abbott*, that the Pérez-Vera Report:

> explains that rather than defining custody in precise terms or referring to the laws of different nations pertaining to parental rights, the Convention uses the unadorned term 'rights of custody' to recognize '*all* the ways in which custody of children can be exercised' through 'a flexible interpretation of the terms used, which allows the greatest possible number of cases to be brought into consideration.' (internal citations omitted).  Thus the Report rejects the notion that because *ne exeat* rights do not encompass the right to make medical or some other important decisions about a child's life they cannot be rights of custody. Indeed, the Report is fully consistent with the conclusion that *ne exeat* rights are just one of the many "ways in which custody of children can be exercised." (internal citations omitted)."

*Abbott,* 560 U.S. at 19–20.

As relevant here, Petitioner has bundle of rights which are considered custody rights under the Hague Convention apart from whether his notarized consent was needed for his children to cross the Ukrainian border. If this one constituent right was revoked due to the war, he still maintained the remainder of custody rights as related to the Hague Convention. This leads back to the fatal flaw in Respondent's position – even if she was permitted to leave Ukraine, it does not follow that she also permission to take the Children to any country of her choice for the duration of her choice and cut off contact with Petitioner.

The case of *Ozaltin v. Ozaltin*, 708 F.3d 355 (2d Cir. 2013) is instructive and illustrates the fact that a removal/retention can be wrongful under the meaning of the Hauge Convention but still be technically lawful. Distilled down to its most salient point as applicable to the instant case, a parent cannot unilaterally, permanently relocate with a child without a court order permitting them to do so. Even if a parent is legally able to reside in a foreign country temporarily, the left behind parent's joint custodial right to determine where a child lives is protected by Hague Convention if the abducting parent intends to turn that temporary legal move into a unilateral, permanent move.

In *Ozaltin,* in the midst of marital discord, the mother took the children to New York. The Turkish court issued an interim order permitting the petitioner father to have visitation with the children in New York. The mother stopped allowing the father to see the children, and the father filed a Hague petition.  The district court concluded that the removal was wrongful relying on the "plain language of the Turkish Civil Code's joint custody provision… ."  *Id.* at 363.

The Second Circuit noted the following with respect to the issue of rights of custody:

> One of the key purposes of the Convention is "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Id.,* art. 1. The *definition* of "rights of custody" under the Convention is an issue of treaty interpretation and does not depend on the domestic

custody law of the country of habitual residence. *Abbott v. Abbott,* 560 U.S. 1, 130 S.Ct. 1983, 1991, 176 L.Ed.2d 789 (2010). The *substance* of those custody rights, however, is provided by the domestic law "of the State in which the child was habitually resident immediately before the removal[,] ... or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State."[13] Hague Convention, art. 3, *see* note 12, *ante.* In other words, domestic law (including certain public decisions and private agreements) supplies the substance of parental rights,[14] but the relevant provisions of the Hague Convention determine whether those rights are considered "rights of custody" under the Convention.

As the Supreme Court has explained, "the Convention's broad definition" of "rights of custody" is not constrained to "traditional notions of physical custody." *Abbott,* 130 S.Ct. at 1991. Instead, the Convention recognizes the "increasingly common" exercise of "[j]oint legal custody, in which one parent cares for the child while the other has joint decision making authority concerning the child's welfare." *Id.* For instance, if the law of the country of habitual residence "confers upon the father the joint right to determine his child's country of residence," that joint right "is a right of custody under the Convention." *Id.* at 1993. On the other hand, the Hague Convention only requires the return of a child if the removal was "wrongful," which occurs if the parent who removed the child did so "in breach of rights of custody" of the other parent.[15] Hague Convention, art. 3, *see* note 12, *ante.* Accordingly, if one parent has lawful authority to change the residence of the child and doing so will not breach the other parent's custody rights, that parent may remove the child without being subject to a return remedy under the Hague Convention. *See, e.g., Shealy v. Shealy,* 295 F.3d 1117, 1124 (10th Cir.2002) (holding that an "interim decision" of a court in the resident country was "determinative ... as to whether [respondent's] action represented a wrongful removal" because it "granted [respondent] the right to remove [the child] from Germany" in the circumstances presented).

*Id.* at 366-67.

The parties in *Ozaltin* agreed that they shared joint rights of custody under Turkish law while divorce proceedings are pending, and that the Turkish courts had the authority to award custody to one of the parents. *Id.* at 368. The mother argued that her removal could not be wrongful because the Turkish courts permitted her to be in the United States and granted the petitioner father visitation in New York. However, as the Second Circuit noted, "a removal under the Hague Convention can still be 'wrongful' even if it is lawful." *Id.* at 369. Citing to the Pérez-Vera Report, the Second Circuit stated:

14

> [F]rom the Convention's standpoint, the removal of a child by one of the joint holders without the consent of the other, is ... wrongful, and this wrongfulness derives in this particular case, not from some action in breach of a particular law, but from the fact that such action has disregarded the rights of the other parent which are also protected by law, and has interfered with their normal exercise. The Convention ... seeks ... to prevent a later decision on the matter being influenced by a change of circumstances brought about through unilateral action by one of the parties.

*Id. (citing* Pérez Vera Report ¶ 71)

The conclusion was that even though the respondent mother had retained physical custody of the children abroad, the petitioner father still retained rights of custody, including the right to determine the children's residence. As applicable to the instant case, even if Respondent was legally permitted to leave Ukraine, there is no court order or Ukrainian law that stripped Petitioner of his rights of custody. Even if the Court were to credit Respondent's argument that she was permitted to leave Ukraine, Petitioner still retains the right to determine the Children's place of residence and other issues regarding their upbringing pursuant to Ukrainian law.  Accordingly, Respondent's argument should fail and her motion to dismiss should be denied.

## III. RESPONDENT'S EXCEPTIONS ARE NOT A BASIS FOR A MOTION TO DISMISS AND CANNOT BE SUSTAINED

Whether or not returning the Children would be a grave risk or whether the Article 20 exception applies very clearly go to the merits of the petition rather than the jurisdiction of the Court to decide this case. Respondent again conflates subject matter jurisdiction with the merits of the petition.

In *Hazbun Escaf v. Rodriquez*, 191 F. Supp. 2d 685, 690 (E.D. Va.), *aff'd sub nom. Escaf v. Rodriguez*, 52 F. App'x 207 (4th Cir. 2002), the court denied a similar motion to dismiss for lack of subject matter jurisdiction filed by a respondent. There, the respondent argued that the petition should be dismissed because, as relevant here, "the child would be in grave risk of physical or

psychological harm if returned to Colombia" and "the return of the child would not be permitted by the fundamental principles of the United States relating to the protection of human rights and fundamental freedoms" under Hague Convention, art. 20. The court denied the motion because each of these contentions "relates to an element of proof required either of the petitioner who seeks a child's return or of the respondent who opposes that return. Each contention will, at the proper time, be the subject of factfinding in determining the merits of the petition, but none relates to the Court's power to adjudicate the merits. *Id*. at 690.

The gravamen of Respondent's arguments regarding the Article 13(b) and Article 20 exceptions to return are based on the erroneous assumption that Petitioner seeks, as a first option, to return the Children to Ukraine. Petitioner's overwhelming preference would be for the Children to be returned to him in France. If the Court were inclined to order the Children back to Ukraine, Petitioner would seek for them to be returned to the relatively safe western region of the country which is comparatively unaffected by the ongoing conflict.

In *NW v. SW*, [2023] EWHC 602 (Fam) the recent UK case cited by Respondent, the court declined to return the children to Kyiv, Ukraine. However, the case also cited to another recent UK decision, *Q v. R*, [2022] EWHC 2961 (Fam)[2] which reached the opposite conclusion, and directed the return of a child to a town in western Ukraine finding that the risk of armed conflict was lower than the article 13(b) threshold. ECF No. 36-8 at ¶ 15. Both decisions were clear that there should be no "blanket policy this court has towards the situation in Ukraine." ECF No. 36-8 at ¶ 32.

Ultimately, if this Court is inclined, Petitioner is willing to return to an area in western Ukraine close to the border of Poland. Petitioner would be willing to rent a home in any region

---

[2]      https://www.bailii.org/ew/cases/EWHC/Fam/2022/2961.html

that the Court considers suitable to avoid a grave risk of harm to the Children.[3]  Petitioner is also

willing to agree to specific ameliorative measures, including a promise to take the Children to

another nearby country if the conflict erupts in the region.  Petitioner is also open to availing

himself to any other ameliorative measures that this Court may deem appropriate under the

circumstances since courts should "address ameliorative measures raised by the parties or

obviously suggested by the circumstances of the case." *Golan v. Saada*, 142 S. Ct. 1880, 1893

(2022).

  Respondent's reliance on the humanitarian parole argument is also misplaced for the

reasons stated above.  For context the article 20 exception has only been applied once in a Hague

case in the U.S. in *Galaviz v. Reyes*, No. EP-21-00286-FM, 2022 WL 620702 (W.D. Tex. Feb. 22,

2022) where the court determined that a lack of access to education for a child with special needs

violated fundamental principles of human rights. In similar immigration situations, such as asylum

grants, courts have found that a grant of asylum is not sufficient to establish a protection under

articles 13(b) and 20 against return.

  In *Lopez Sanchez v. RGL*, 761 F3d 495 (5th Cir 2014)*,* three Mexican children were taken

to the United States by their aunt and uncle.  While in the U.S., the children sought asylum claiming

fear of their mother's boyfriend who they alleged was abusing them. Their mother then initiated a

Hague proceeding seeking their return to Mexico.  The U.S. Department of Health and Human

Services, Office of Refugee Resettlement filed a motion seeking a stay of any ruling arguing that

"the asylum applications … may shed light on the Court's determination of whether the children

face a grave risk of harm … [and] may provide information relevant to the Court's determination

---

[3]  If the Court is inclined to investigate this option, it is respectfully requested that a
further hearing be conducted to provide information and evidence concerning which regions of
Ukraine would permit the safe return of the Children as an ameliorative measure.

[regarding the Article 20 human rights exception]."[4]   The district court rejected the motion for a stay and granted the petition finding that the Articles 13(b) and 20 exceptions were not established.

The children appealed the district court decision and subsequent to the filing of appeal, the children were granted asylum.  On appeal, the children argued that the case should be remanded back to the district court in light of the grant of asylum and whether the Article 13(b) or 20 exception now applies. Their mother argued that since the Hague proceedings were more thorough that decision should control rather than the grant of asylum. The United States, in its amicus brief, argued that a grant of asylum was not dispositive of the issue but certainly relevant to the Article 13(b) and 20 exceptions.

The Fifth Circuit determined that "The asylum grant does not supersede the enforceability of a district court's order that the children should be returned to their mother, as that order does not affect the responsibilities of either the Attorney General or Secretary of Homeland Security under the INA."  The Fifth Circuit noted that the evidentiary burden in an asylum case (preponderance of the evidence) is lower than what is required to establish an Article 13(b) and 20 exception (clear and convincing evidence).  It further stated that "[d]espite similarities, the asylum finding that the children have a well-founded fear of persecution does not substitute for or control a finding under Article 13(b) of the Convention about whether return 'would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.' "

In *Salame v. Tescari,* 29 F.4th 763 (6th Cir 2022) two children were abducted from Venezuela by their mother. The father filed a Hague case to which the mother raised an Article 13(b) exception based on the father's alleged physical and verbal abuse, that Venezuela is a zone

---

[4] *Sanchez v. Sanchez*, No. SA-12-CA-568-XR, 2012 WL 5373461, at *4 (W.D. Tex. Oct. 30, 2012), *vacated and remanded sub nom. Sanchez v. R.G.L.*, 761 F.3d 495 (5th Cir. 2014).

of war and famine, and because the Venezuelan court system would be unable to adjudicate the underlying custody dispute. The district court determined that the mother did not establish her exception and directed the return of the children back to Venezuela.

The Sixth Circuit agreed with the Fifth Circuit decision in Sanchez. The courts rather than a governmental agency have " 'authority to determine [the] risks' children may face upon return to their country of habitual residence." *Id.* at 772 (internal citations omitted). "'Prior consideration of similar concerns in a different forum' may be relevant, but a grant of asylum does not strip the district court of its authority to make controlling findings regarding circumstances the children may face upon return." *Id.* The Sixth Circuit, like the Fifth before it, noted the lower evidentiary burdens in asylum cases compared to the Article 13(b) exception in Hague cases, and further noted that interested parties may not be afforded the ability to participate in asylum proceedings.

## **CONCLUSION**

This Court has the power to adjudicate this case on the merits. For the foregoing reasons Respondent's motion to dismiss should be dismissed and the Court should hold an evidentiary hearing on the petition.


Dated: June 23, 2023

Respectfully Submitted:

By: _____
Richard Min, Esq.
Michael Banuchis, Esq.
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, NY 10170
(212) 681-6400 (t)
(212) 681-6999 (f)

*ATTORNEYS FOR PETITIONER*