UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
 In the Matter of M.T. and K.T.,

   ROMAN TERESHCHENKO,

                              Petitioner,

             - against -

   YASAMIN KARIMI,

                           Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No: 23-cv-2006

Assigned Judge:
Honorable Denise Cote

*Oral Argument Requested*


# RESPONDENT'S MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS THE PETITION
## PURSUANT TO FED. R. CIV. P. RULES 12(b)(1) and (6)


KRAUSS SHAKNES
TALLENTIRE & MESSERI LLP


Valentina Shaknes
Justine Stringer
350 Fifth Avenue, Suite 7620
New York, New York 10118
(212) 228-5552
vshaknes@kstmlaw.com
jstringer@kstmlaw.com


***ATTORNEYS FOR RESPONDENT***


Dated: June 27, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

SUMMARY OF UNDISPUTED FACTS .....................................................................................3

ARGUMENT ..................................................................................................................................4

    I.    PETITIONER FAILS TO REBUT RESPONDENT'S SHOWING
          THAT THE COURT LACKS SUBJECT MATTER JURISDICTION ..........................4

          A.    PETITIONER'S CLAIM THAT THE HAGUE CONVENTION
               AUTHORIZES "RETURN" OF A CHILD TO ANY "THIRD"
               COUNTRY, RATHER THAN THE CHILDREN'S COUNTRY
               OF HABITUAL RESIDENCE, IS FALSE .............................................................4

          B.    PETITIONER CANNOT MAKE THE REQUIRED *PRIMA*
               *FACIE* SHOWING OF WRONGFUL REMOVAL OR
               RETENTION .............................................................................................................7

               1.  A DETERMINATION OF WHETHER THE REMOVAL OR
                   RETENTION WAS WRONGFUL GOES TO THIS COURT'S
                   SUBJECT MATTER JURISDICTION ..................................................7

               2. PETITIONER ADMITS THAT THE REMOVAL WAS NOT
                  WRONGFUL ...........................................................................................8

                3.  PETITIONER ALLEGATION OF WRONGFUL
                  RETENTION IS BASELESS .............................................................9

    II.    AMELIORATIVE MEASURES ....................................................................................10

    III.  RESPONDENT IS NOT ASSERTING THAT ARTICLE 13(B) AND
          ARTICLE 20 DEFENSES RELATE TO SUBJECT MATTER
          JURISDICTION ...........................................................................................................11

CONCLUSION .............................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Golan v. Saada*,
    142 S. Ct. 1880 (2022) .................................................................................................10, 12

*Hazbun Escaf v. Rodriguez*,
    191 F.Supp. 2d 685 (E.D. Va 2002) ...................................................................................12

*In Re B (A Child),*
    2020 EWCA Civ. 1187 ..................................................................................................5, 6

*Osorio v. Barboza*, W.D.Tex., 2016
    2016 WL 10587205 ......................................................................................................7, 8

*Ozaltin v. Ozaltin*,
    708 F.3d 355 (2d Cir. 2013).............................................................................................9

*Salame v. Tescari*,
    29 F.4th 763 (6th Cir. 2022) ..........................................................................................13

## PRELIMINARY STATEMENT

*First*, Petitioner is asking this Court to "return" the children not to Ukraine, their undisputed country of habitual residence, but to France, a country they have never even visited. Remarkably, Petitioner claims that "[i]t is uncontroversial that return to a third country [i.e., a country to which the child has no connection] is permitted under the Convention." In fact, as Petitioner admits, no provision in the text of the Hague Convention itself authorizes the Court to grant such relief. Not surprisingly then, in the forty-three years since the United States joined the Hague Convention, and after thousands of Hague Convention cases have been adjudicated in the Unites States, not a single U.S. court has *ever* issued such a supposedly "uncontroversial" order.

Petitioner instead relies on one ruling from a foreign court that he claims did send the child to a "third country" that was not her habitual residence. Petitioner, however, misrepresents that ruling: contrary to Petitioner's representation, the court in that case ordered the return to France *only after* finding that France had become the child's "country of habitual residence." In short, Petitioner argues that this Court has jurisdiction because it can, and should, order something that, in forty-three years of the Hague Convention, certainly no court in this country, and likely no court in any of the other hundred plus signatories to the Convention, has ever ordered. Because the Convention does not allow for such relief, the Court lacks subject matter jurisdiction over this dispute.

*Second*, the Court also lacks subject matter jurisdiction because Petitioner cannot make the required *prima facia* showing of a wrongful removal or retention. Here, when Ukraine was attacked by the Russian army, with its cities bombed daily and its children being kidnapped from the occupied territories, the Ukrainian government asked women and children to leave the country to save their lives, and it promulgated new laws allowing them to do so regardless of any consent or custody rights of another parent. Millions of women and children did so. Indeed, Petitioner at the time consented to the Children leaving Ukraine and provided Respondent with their travel documents.

Petitioner's argument then boils down to the following: Petitioner himself left Ukraine and has not set foot there since the war started; Petitioner knows better than to risk his life or limb by going to Ukraine; but it was *wrongful* for Respondent and the Children to leave Ukraine, or not to return to Ukraine, despite the laws explicitly allowing them to leave; *they* should have risked their lives on an off-chance that Petitioner would one day decide to go to Ukraine to exercise his custodial rights there, which he clearly would not do. This argument is patently absurd.

*Third*, Petitioner's late-found willingness to consider an ameliorative measure of moving with the Children to western Ukraine is unavailing. As the U.S. Supreme Court recently determined, the Convention does not contemplate that courts must consider any ameliorative measures, not the least because once children leave this country, the U.S. courts have no power to enforce any ameliorative measures they may have ordered. Thus, even if Petitioner promises to move to western Ukraine, once he has the Children, this Court will have no power whatsoever to ensure that he does so. Furthermore, this proposed move is likely a ruse: Petitioner, like all Ukrainian men his age, is required to serve in the army during the time of war; Petitioner apparently has no desire to fight for his country, and so he has not visited Ukraine since the day the war started; it defies credulity that he will now get himself drafted into the Ukrainian army by going back to any part of Ukraine.

*Fourth*, even if the Court has jurisdiction to hear this dispute, it still should dismiss the Petition. The only country the Court could send the Children to is Ukraine – a country at war, with all its cities subject to constant bombings and missile and drone attacks, which cause daily civilian casualties. This is a quintessential example of a situation where a return should be denied because it would subject the children to a grave risk of harm and put them in an intolerable situation.

*Finally*, the Petition should also be dismissed because it is axiomatic that sending children back to a war zone would amount to "a violation of human protection and fundamental freedoms" in violation of Article 20 of the Convention.

## SUMMARY OF UNDISPUTED FACTS

Respondent's opening brief set forth a summary of undisputed facts. In Petitioner's opposition to the motion, Petitioner set forth his own statement of facts. Based on the Petition and the opposition, it is clear that the following facts essential to this motion to dismiss are not in dispute:

- The parties were married on April 22, 2017 in Odessa, Ukraine. Petition, p. 2, Paragraph 9; Motion to Dismiss, p. 2.

- The parties have two children: M.T., born in March 2017 in Kyiv, Ukraine; and K.T., born in June 2017 in Hollywood, Florida (the "Children"). Petition, p. 3, Paragraph 10; Motion to Dismiss, p. 2.

- M.T. suffers from congenital CMV.

- The parties and the Children are Ukrainian citizens. Petition, p. 3, Paragraph 10; Motion to Dismiss, p. 2.

- The parties were divorced in Ukraine on or about November 16, 2018. Petition, p. 3, Paragraph 11; Motion to Dismiss, p. 2.

- On May 29, 2019, the parties executed a custody agreement pursuant to which the Children are to reside with Respondent and Petitioner has certain visitation rights (the "Custody Agreement"). Petition, p. 3, Paragraph 12; Motion to Dismiss, pp. 2-3.

- There are ongoing custody proceedings in Ukraine, where Petitioner and Respondent are both seeking to modify certain provisions of the Custody Agreement. Petition, p. 3, Paragraph 14; Motion to Dismiss, p. 3.

- On February 24, 2022, Russia invaded Ukraine.

- On February 24, 2022, Petitioner was in Dubai. Paragraph 18 of Petitioner's expert report submitted on June 23, 2023.

- Petitioner has not returned to Ukraine since the war started.

- On or about February 25, 2022, at Respondent's request, Petitioner consented to Respondent leaving Ukraine with the Children. Petition, p. 4, Paragraph 19; Opposition to Motion to Dismiss, p. 4.

- On or about February 26, 2022, Petitioner arranged for his office to provide Respondent with the Children's travel documents for the purpose of her taking the Children out of Ukraine due to the war. Petition, p. 4, Paragraph 19; Opposition to Motion to Dismiss, p. 4.

- In response to Russia's invasion, the Ukrainian government encouraged women and children to leave Ukraine, and passed new laws allowing children to leave the country accompanied by only one parent or other relatives, without the consent of the other parent. Opposition to Motion to Dismiss, p. 11; Motion to Dismiss, p. 3.

- Respondent left Ukraine with the Children in early March 2022. Petition, at p. 4, Paragraph 20.

- In response to the Ukrainian refugee crisis, the United States government created a special parole program, Uniting for Ukraine, to allow Ukrainian refugees to enter the United States legally. Respondent and the Children were granted parole to enter the United States. Exhibit C to Respondent's opening brief.

- On or about July 11, 2022, Respondent and the Children came to New York City, where they have remained through the present. Petition, p. 5, Paragraph 21; Motion to Dismiss, p. 3.

- The war in Ukraine is presently ongoing.

## ARGUMENT

## I.  PETITIONER FAILS TO REBUT RESPONDENT'S SHOWING THAT THE COURT LACKS SUBJECT MATTER JURISDICTION

### A.  Petitioner's Claim that the Hague Convention Authorizes "Return" of a Child to Any "Third" Country, Rather Than the Children's Country of Habitual Residence, is False.

Respondent's opening brief demonstrated that the sole purpose of the Hague Convention is to return a child to his or her state of habitual residence. Therefore, because the Petition seeks an order sending the Children to France, a country to which they have no connection whatsoever, it does not arise under the Hague Convention and this Court therefore lacks jurisdiction to hear it.[1] *See* Motion to Dismiss, at pp. 5-8.

Petitioner's opposition retorts that it is supposedly "uncontroversial that return to a third country is permitted under the Convention." *See* Opposition to Motion to Dismiss, p. 5. That is false.

---

[1] The Petition is nothing more than a disguised custody petition. It appears that Petitioner is now claiming – wrongly – that the parties' Custody Agreement has been superseded by the Statement of the Prymorska District Administration at the Odesa City Council. While this claim is factually and legally wrong, it only confirms that Petitioner is misusing this proceeding to obtain custody of the Children, which this Court has no jurisdiction to grant. If Petitioner believes he has an enforceable order from a foreign country, his remedy is to enforce that order in New York through the state courts which have the jurisdiction to entertain those claims.

First, Petitioner does not (and cannot) point to any provision of the Hague Convention itself or ICARA that would permit a return of a child to a "third country" that is not her state of habitual residence.

Second, Petitioner also admits that, in the Hague Convention's 43-year long history, not a single court in the United States has ever ordered the "return" of a child to a place that is not the child's habitual residence. *See* Opposition to Motion to Dismiss, p. 7 ("Requesting that children be returned to a country other than the habitual residence is not a common request in the United States and this may indeed be the first case of its kind.").

Third, Petitioner cites a sole foreign case, *In Re B (A Child)*, (2020) EWCA Civ. 1187, which he claims has ordered a child's return to a "third country." Petitioner, however, misrepresents this appellate court decision from the United Kingdom. At issue in that case was not whether a child should be sent to a "third country," but instead which country was the child's country of habitual residence. *Id.* Contrary to Petitioner's representations, the appellate court in that case ordered the child's return to France *only after* it determined that France was in fact the child's country of habitual residence:

> What degree of integration and what degree of disengagement will be sufficient to mean that a child is habitually resident in the state to which the family has moved will obviously vary from case to case. However, adopting what Black LJ said in Re J (Finland), in my view the judge has not demonstrated sufficiently that she had in mind the relevant factors in B's old and new lives. She did not carry out a sufficient comparative or balancing exercise of the factors connecting B with France and with Australia.
>
> **If the judge had performed this exercise, she would inevitably have concluded that B was habitually resident in France.** The family had left Australia "with the intention of emigrating and having made all the necessary plans to do so"; per Lady Hale in In re LC. There had been a considerable "amount of adult pre-planning" and "all the central members of the child's life in the old state" had moved to the new state; per Lord Wilson in In re B. **In the circumstances of this case B had achieved the requisite degree of integration, in part because the family had severed**

> their substantive connections with Australia, such that B was
> habitually resident in France as at [sic] 3 January 2020.

*In Re B (A Child)*, (2020) EWCA Civ. 1187 (emphasis added), annexed hereto as **Exhibit H**, Paragraphs 129, 130.

Fourth, Petitioner relies on the Explanatory Report and the Solicitor General's Statement, which suggest a possibility that the Convention's drafters *may have* contemplated, without actually saying so in the Convention itself, an exception to the general rule that children may only be returned to their country of habitual residence. Given that no court has ever applied this exception, it likely does not exist. But even if it did exist, it would be extremely narrow, applying in the extraordinary circumstances where the child's household in which the child had habitually resided prior to abduction moved to another country post-abduction. *See* Opposition to Motion to Dismiss, p. 7. Thus, whether or not such an exception exists, it clearly would not apply here because both before and after leaving Ukraine the Children resided with Respondent. Accordingly, sending the Children to France would not return them to their habitual household – it would *remove* them from their habitual household instead.

In short, Petitioner argues that this Court has jurisdiction because it can, and should, order something that, in forty-three years of the Hague Convention, certainly no court in this country, and likely no court in any of the other hundred plus signatories to the Convention, has ever ordered. Because the Convention does not allow for such relief, the Court lacks subject matter jurisdiction over this dispute.

**B.    Petitioner Cannot Make The Required Prima Facie Showing of Wrongful Removal or Retention**

    **1.    A Determination of Whether the Removal or Retention Was "Wrongful" Goes To This Court's Subject Matter Jurisdiction**

Respondent's opening brief cited several decisions all explicitly dismissing petitions under the Hague Convention for lack of subject matter jurisdiction because petitioner could not make a *prima facie* showing that the removal was wrongful. Petitioner responds that his inability to make the required *prima facie* showing goes to the merits of his Petition rather than this Court's lack of jurisdiction. Petitioner is wrong.

Petitioner does not dispute the holdings of the cases cited in Respondent's Brief. Instead, Petitioner attempts to distinguish these cases by arguing that all these cases involved different factual reasons for *why* a *prima facie* showing could not be made. That argument misses the point entirely. Of course, each case presents its own set of facts and, thus, the reasons a *prima facie* showing of wrongful removal or retention could not be made will necessarily differ from case to case. The legal principle all these cases establish, however, remains the same -- failure to make the required *prima facie* showing, whatever the factual reason therefore, deprives the Court of subject matter jurisdiction over the Petition.

Petitioner also relies on a single, unpublished decision from the Western District of Texas to argue that Petitioner's inability to make a *prima facie* case of wrongful removal goes to the merits of the Petition rather than the Court's jurisdiction. *See Osorio v. Barboza*, 2016 WL 10587205, *3 (W.D. Tex. 2016). Petitioner's reliance is misplaced. The respondent in *Osorio v. Barboza* argued that the court lacked subject matter jurisdiction because the petitioner lacked standing under Article III of the United States Constitution. *Id*. Because the court found that petitioner had standing, the court also held that the court had subject matter jurisdiction. While the *Osorio v. Barboza* court did briefly allude to petitioner's inability to make a *prima facie* showing of wrongful removal (without

analyzing it or citing any authority for it), since it was not the issue before the court, it did not need to and did not decide the issue. *Id*.

### 2.     Petitioner Admits That Removal Was Not Wrongful

Respondent's opening brief demonstrated that Respondent's departure with the Children from Ukraine was not wrongful because, in response to Russia's unprovoked invasion and relentless bombing of Ukrainian cities, the Ukrainian government passed new laws specifically allowing and encouraging minor children to leave the country regardless of the consent of both parents.

In his opposition, Petitioner does not dispute that such legislation was enacted and also does not dispute that as a result of it, Respondent had the legal right under the Ukrainian law to leave the country with the Children. *See* Opposition to Motion to Dismiss, p. 11. Furthermore, Petitioner admits that he consented to Respondent and the Children leaving Ukraine, and that he actually directed his office to provide Respondent with the Children's travel documents (which until that time were under his control) to enable them to exit Ukraine. These admissions conclusively establish that Respondent's and the Children's flight from Ukraine was not "wrongful" under the Convention.

Petitioner, however, then spills a lot of ink trying to prove something that Respondent has never disputed, *i.e.* that Petitioner has certain custody rights as set forth in the Custody Agreement. He certainly does. But it does not follow that the removal was wrongful simply because, as Petitioner argues, while he consented to the removal, he did not consent to Respondent subsequently bringing the Children to the United States.

As war refugees, Respondent and the Children had to go to whatever country offered them asylum. It happened to be the United States, which, recognizing the crisis facing Ukrainian women and children, created a special program to allow these refugees, including Respondent and her Children, to enter and reside lawfully in the United States, to be able to work legally and support themselves here, while the war is ongoing. Because beggars cannot be choosers, Respondent

accepted the opportunity offered by our country. If the removal was not wrongful within the meaning of the Hague Convention when Respondent and the Children left Ukraine, it cannot somehow become wrongful because they ended up in the United States, which offered them a refuge, rather than some other country, which did not.

### 3.     Petitioner's Allegation of Wrongful Retention Is Baseless

The focus of the Petition was on the wrongful removal of the Children from Ukraine and the Petition alleges no facts that would support his argument of "wrongful retention," not even something as fundamental as the date Petitioner alleges the retention of the Children in the United States became wrongful. *See* Petition, pp. 2-5, Paragraphs 9-24. This pivot on Petitioner's part is not surprising, since he now concedes that he consented to the Children leaving Ukraine, so he cannot sincerely claim that the removal was wrongful.

Petitioner is now alleging that the Children are wrongfully retained in the United States and seeks their "return" to France. This necessarily means that by "wrongful retention" Petitioner means that it is wrong for Respondent not to send the Children to France. As demonstrated above, this is contrary to the Hague Convention and is not the type of relief that can be granted by the Hague Convention.

That is why Petitioner's reliance on *Ozaltin v. Ozaltin*, 708 F.3d 355 (2d Cir. 2013), is misplaced. In *Ozaltin,* the mother had the right to take the children to the United States for vacation, but then failed to come back. Of course *that* retention was wrongful, since the *Ozaltin* mother had no legitimate reason not to come back to the children's country of habitual residence that was at peace. *Id*. at 363. That is clearly completely inapplicable to the facts of this case, where Petitioner does *not* claim that Respondent should have taken the Children back to their home country, Ukraine, and where Ukraine is in the midst of a war.

Finally, Petitioner's claim that Respondent's alleged violation of the Custody Agreement

has left him with no recourse but to bring this Petition is demonstrably false. First, this claim once again highlights the fact that the true basis for this Petition is the underlying custody dispute over which this Court lacks jurisdiction. Second, Petitioner is hardly without recourse, given that custody proceedings are ongoing in Ukraine, where Petitioner is represented by counsel, and where the next conference is scheduled for July 17, 2023 (to be held virtually). The Ukrainian court will ultimately rule on the parties' dueling custody claims, so Petitioner is clearly not without recourse and his allegation in this respect is simply false.[2]

## II.   AMELIORATIVE MEASURES

In a "Hail Mary" argument, Petitioner, in his opposition, claims for the first time that if the Children are "returned" to him in France, as an "ameliorative measure" he may be "willing" to then move with them to some place in "western Ukraine close to the border of Poland," to satisfy the requirement of the Children being returned to their country of habitual residence. *See* Opposition to Motion at Dismiss, p. 16. This argument is legally and factually unsupportable.

First, there had been a circuit split on the issue of ameliorative measures, but this question was finally and definitively resolved by the U.S. Supreme Court in 2022 in the case of *Golan v. Saada*, 142 S.Ct. 1880 (2022).[3] The Supreme Court in *Golan v. Saada* held that courts have the discretion not to consider ameliorative measures, even in cases where a party raises them, in large part because in some cases, it may be so "clear that they would not work because the risk is so grave." *Id*. at 1894. Court can decline to consider ameliorative measures when such measures are "unworkable" or "draw the court into determinations properly resolved in custodial proceedings." *Id.* at 1895.

---

[2] Moreover, as noted above, if Petitioner believes that he has custody of the Children pursuant to a legitimate order from Ukraine – a claim with which Respondent strongly disagrees – the remedy for Petitioner is domesticate and enforce such order through the New York state court system, which would have jurisdiction over this matter.

[3] Lead counsel for Petitioner was also lead counsel for Saada and his arguments in favor of considering ameliorative measures, were considered and rejected by the Supreme Court. He is making the same arguments here.

Here, the entire country of Ukraine in under attack. In fact, as of June 20, 2023 there were dozens of Russian drone bombs targeting Kyiv and Lviv, a city in western Ukraine, to which Petitioner proposes the children be "returned." *See* **Exhibit I**, articles detailing the recent bombings in Lviv. Even Petitioner himself calls western Ukraine only "relatively safe." *See* Opposition to Motion to Dismiss, p. 16. How can a court in the United States possibly determine what town in Ukraine is "relatively safe" enough for the Children to return to? Particularly when the person claiming western Ukraine is "relatively safe" is not even present in western Ukraine (or Ukraine, period).

Even were the Court were to order that the Children move with Petitioner to western Ukraine, such orders are not workable and would not be enforceable in France. In addition, Petitioner has a residence in Dubai, where he has stated he wanted the Children to be. *See* Petition, p. 4, Paragraph 19. United Arab Emirates, where Dubai is located, is not even a signatory to the Hague Convention. Once the Children are gone from the Court's jurisdiction, Respondent would not even have a way to seek their return and this Court would be powerless to enforce its orders.

Finally, Petitioner's argument that he is willing to return to Ukraine is likely a ruse. Due to martial law, he will be conscripted into military service upon his return. Petitioner clearly has no desire to fight for his country which is why he has not set foot there since the war started. And, once again, even if he commits to the Court that he would return to and remain in western Ukraine, there is no way for the Court to enforce that.

## III.    RESPONDENT IS NOT ASSERTING THAT ARTICLE 13(B) AND ARTICLE 20 DEFENSES RELATE TO SUBJECT MATTER JURISDICTION

First, Petitioner misunderstands Respondent's argument with respect to the grave risk of harm and the Article 20 defenses raised. Respondent has not argued that the grave risk of harm or

the Article 20 defense go to the Court's subject matter jurisdiction.[4] Rather, in addition to dismissal for lack of subject matter jurisdiction, the Petition should also be dismissed because returning the children to Ukraine would expose them to a grave risk of harm and violate the protection of human rights and fundamental freedoms. As the Supreme Court recently made clear, "The Convention does not pursue return exclusively or at all costs. Rather, the Convention 'is designed to protect the interests of children and their parents,' and children's interests may point against return in some circumstances." *Golan v. Saada*, 142 S.Ct. at 1888. There is no doubt that this case falls under the circumstances contemplated by the Supreme Court.

With respect to the grave risk of harm, Respondent's opening brief showed that returning a child to a war zone is the quintessential textbook example of grave risk used by the courts, including the Second Circuit. *See* Motion to Dismiss, p. 11. Petitioner does not appear to dispute that. Instead, Petitioner claims that this question should properly be addressed on a motion for summary judgment rather than the motion to dismiss. In this case, it is a distinction without a difference.

It is undisputed and indisputable that Ukraine is at war with Russia and that its cities all over the country are being bombed daily. The Court can certainly take judicial notice of these indisputable facts without the need for an evidentiary hearing and dismiss the Petition on that basis. While Petitioner claims that western Ukraine is "relatively safer," that claim is baseless. As detailed above, just seven days ago, on June 20, 2023, Lviv was bombed. *See* **Exhibit I**, New York Times article entitled "Russia Targets Kyiv and Lviv with Attack Drones." Moreover, as demonstrated above, Petitioner's claim that he would go to and remain in western Ukraine is unenforceable and unlikely to be followed by him.

Similarly, while it is true that there are few cases where Article 20 has been invoked, it is

---

[4] The *Hazbun Escaf v. Rodriquez*, 191 F.Supp. 2d 685 (E.D. Va. 2002) case cited to by Petitioner is not applicable here, as in that case, the respondent was alleging grave risk of harm, *inter alia*, as part of their argument that the court lacked subject matter jurisdiction.

axiomatic that sending children back to a war zone amounts to "a violation of human protection and fundamental freedoms." The cases cited by Petitioner where courts have declined to invoke Article 20 are inapposite, as none of them involved children fleeing active war zones, as is the case here. In fact, in *Salame v. Tescari*, 29 F.4th 763, 769 (6th Cir. 2022), in determining that Venezuela did not amount to a "zone of war, famine, or disease," the Sixth Circuit referenced another court's finding that Venezuela's food and medicine shortages and violent protests did not amount to a zone of war, famine or disease, and went on to state specifically: "Venezuela is not actively torn by civil war -- it remains a single integrated country capable of signing international treaties. As such, it remains a fellow signatory to the Hague Convention." *Id.* (internal citations omitted). Here, it is undisputed that Ukraine is an active war zone, which is perhaps the only "uncontroversial" fact in this case.

## CONCLUSION

For the aforementioned reasons, and those stated in Respondent's opening brief, Respondent respectfully requests that the Court dismiss Petitioner's Petition.

Dated: June 27, 2023
         New York, New York

Respectfully submitted,

Valentina Shaknes
Justine Stringer
Krauss Shaknes Tallentire & Messeri LLP
350 Fifth Avenue, Suite 7620
New York, New York 10118
(212) 228-5552
vshaknes@kstmlaw.com
jstringer@kstmlaw.com

13