UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
ROMAN TERESHCHENKO,                      :
                                         :
                          Petitioner,    :       23cv2006 (DLC)
                                         :
              -v-                        :        OPINION
                                         :       AND ORDER
YASAMIN KARIMI,                          :
                                         :
                          Respondent.    :
                                         :
---------------------------------------- X
APPEARANCES:

For the petitioner, Roman Tereshchenko:
Richard Min
Michael Banuchis
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, NY 10170

Daniel Lipschutz
Aronson Mayefsky & Sloan, LLP
12 East 49th Street
32nd Floor
New York, NY 10017

For the respondent, Yasamin Karimi:
Karen R. King
Morvillo Abramowitz Grand Iason & Anello P.C.
565 Fifth Avenue
New York, NY 10017

Bruce A. Barket
Aida Ferrer Leisenring
Barket, Marion, Epstein & Kearon, LLP
666 Old Country Road
Garden City, NY 11530

Stephanie Renee Schuman
Leaf Legal, P.C.
24 E. 21st St., 4th Floor
New York, NY 10010

DENISE COTE, District Judge:

The respondent seeks a stay pending appeal of the January 8, 2024 Opinion and Order ("January 8 Order") granting the petition filed by Roman Tereshchenko ("Tereshchenko" or the "Father") pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (the "Hague Convention").  For the following reasons, the request for a stay is denied except to the following extent.  An administrative stay shall be issued for three days to permit the respondent to seek a stay from the Court of Appeals for the Second Circuit.

## Background

Tereshchenko filed this Hague Convention petition on March 8, 2023, seeking the return of his two children, who had been abducted by their mother, respondent Yasamin Karimi ("Karimi" or the "Mother"), in 2021.  The January 8 Order describes the relevant facts, which are summarized here.  Tereshchenko v. Karimi, No. 23cv2006(DLC), 2024 WL 80427 (S.D.N.Y. Jan. 8, 2024).  Familiarity with the January 8 Order is assumed.

The children, M.T. and K.T., who are now seven and six years of age, were habitual residents of Ukraine.  Their parents, who are Ukrainian citizens, are divorced.  After the Children's Service of Odesa City Council determined on October 11, 2021 that the children were to reside with Tereshchenko

2

("Guardianship Decision"), Karimi abducted the children and took them to an undisclosed location in Odesa.

After Russia invaded Ukraine in February 2022, Karimi contacted Tereshchenko and sought the children's travel documents.  Tereshchenko cooperated so that the children could leave Ukraine.  He asked that the children be brought to him in Dubai, where he had a home, but Karimi instead took the children to Poland, the Netherlands, Spain, and ultimately on July 11, 2022, to the United States.

Karimi did not advise Tereshchenko where she had taken the children, but with the assistance of international authorities and then the U.S. Department of State, Tereshchenko located Karimi in New York City and filed this action on March 8, 2023. Karimi evaded service and resisted appearing in court.  After an Order of May 26 allowed a process server to affix the pleadings to Karimi's apartment door, Karimi appeared at a conference on June 9.

Over the succeeding months, the parties attempted to mediate the petition, using the services of the court's Mediation Office, and then agreed to abide by a decision regarding custody to be issued by the District Court of the City of Odesa ("District Court").  The District Court issued its decision on November 21, ruling that the children are to reside with Tereshchenko.  It noted that Karimi had repeatedly violated

3

the terms of a custody agreement that had been signed by the parents after their divorce.  Although Karimi had agreed to abide by the District Court's decision, she refused to do so, changed counsel and continued her opposition to the petition.

A hearing was held on January 3, 2024, and at the conclusion of the hearing, the Court granted the petition. While Tereshchenko offered to take the children to reside with him in Ukraine, the Court ruled that Tereshchenko could take the children to France to reside with him at his home there. Tereshchenko, 2024 WL 80427, at *8-10.

After the January 3 hearing, the parties were ordered to discuss how the children will be transferred to Tereshchenko's custody.  Karimi has refused to produce the passports for the children, contending that they have been lost.  On January 17, petitioner's counsel advised the Court that Tereshchenko will arrive in the United States on January 27 to pick up replacement travel documents for the children and travel with them to France shortly thereafter.  He has invited Karimi to join him and the children as they travel to France and has offered to assist Karimi in procuring reasonable accommodations for her in France to allow a "seamless transition" and to give her meaningful access to her children.

On January 16, Karimi, represented by new counsel, requested a stay of proceedings to permit Karimi to file an

4

expedited appeal.  Counsel represents that it will file its
brief on appeal on January 31, and expects that the appeal will
be fully briefed by the end of February 2024.

On January 17, respondent opposed the stay.  At a
conference on January 18, the Court denied the request for a
stay.  The reasons for that denial are set forth in this
Opinion.  The parties agreed at the conference that, absent a
stay from the Court of Appeals, the petitioner will take
physical custody of the children on January 28, and fly with
them to France on or after Tuesday, January 30, 2024.

## Discussion

Karimi seeks a stay of the January 8 Order in this Hague
Convention proceeding pending her expedited appeal of the
decision.  To determine whether to issue a stay pending appeal,
a court must consider

> (1) whether the stay applicant has made a strong showing
> that he is likely to succeed on the merits; (2) whether the
> applicant will be irreparably injured absent a stay; (3)
> whether issuance of the stay will substantially injure the
> other parties interested in the proceeding; and (4) where
> the public interest lies.

DiMartile v. Hochul, 80 F.4th 443, 456 (2d Cir. 2023) (citation
omitted).  "To satisfy the 'success on the merits' factor, the
moving party must show that his chance of success on the merits
is more than a 'mere possibility.'"  Id. (citation omitted).

"A stay pending appeal is not a matter of right."  Id.
While the first two of the four factors "are the most critical,"
"a stay is an exercise of judicial discretion, and the party
requesting a stay bears the burden of showing that the
circumstances justify an exercise of discretion."  New York v.
U.S. Dep't. of Homeland Sec., 974 F.3d 210, 214 (2d Cir. 2020)
(citation omitted).

"In every case under the Hague Convention, the well-being
of a child is at stake; application of the traditional stay
factors ensures that each case will receive the individualized
treatment necessary for appropriate consideration of the child's
best interests."  Chafin v. Chafin, 568 U.S. 165, 179 (2013).
The Supreme Court has emphasized that district and appellate
courts should take steps "to decide these cases as expeditiously
as possible, for the sake of the children."  Id.  A stay of a
court's decision under the Hague Convention is therefore not
guaranteed, for such a guarantee would "undermine the goal of
prompt return and the best interests of children who should in
fact be returned."  Id.

The respondent has not met her burden to show that a stay
of the January 8 Order is justified.  She has failed to show
that any of the four factors weighs in favor of a stay.

Karimi first argues that her petition for a stay raises
four serious questions of law that require review.  This

misstates her burden.  She must show that there is more than a
"mere possibility" that a court will find for her on the merits
for at least one of these questions.  She has not met that
burden with respect to any of her four legal questions.

The first question of law that Karimi identifies is whether
this action was brought more than one year after removal, which
would permit her to rely on the "now settled" defense.  As the
January 8 Order explains, the Court granted the petitioner's
motion in limine to strike this defense at the January 3 hearing
because the petitioner had forfeited this defense to the
petition and on the merits.  The petitioner was prejudiced by
the respondent's failure to identify the now-settled defense
until the eve of the hearing.  Moreover, one year had not
elapsed between the wrongful retention and the filing of this
action, whether that is measured from the date by which
Tereshchenko would have understood that Karimi was not bringing
the children to Dubai, or from the date of their arrival in the
United States.  Tereshchenko, 2024 WL 80427, at *7.

The second legal issue that Karimi identifies is whether
the Hague Convention permits a child to be returned to a parent
in a third country, that is, a country other than the country
that was the child's habitual residence.  The January 8 Order
addresses this question in detail, reviewing the language in the
Hague Convention, its drafting history, the opinion of the U.S.

7

State Department, and a ruling by a British court.  Relying on
this analysis, the January 8 Order held that the Hague
Convention allows a child to be returned to a parent's current
abode in a third country, rather than requiring the child to be
returned to the country that was once the child's habitual
residence but in which the parent no longer resides.
Tereshchenko, 2024 WL 80427, at *8-10.  Karimi has not explained
why this conclusion was in error.  In any event, as explained in
the January 8 Order, Tereshchenko had agreed to return to
Ukraine if the Court required him to do so.  Karimi has never
suggested that she desires the children to return to Ukraine.

The third legal issue identified by Karimi is "whether a
U.S. district court has jurisdiction to determine the travel
rights of a parent, particularly when custody proceedings are
ongoing and being actively litigated."  Karimi has not shown a
likelihood of succeeding with this argument on appeal.  First of
all, this argument was forfeited.[1]  At no point before or during
the January 3 hearing did Karimi make this argument.  In any
event, this Court has jurisdiction over this petition pursuant
to the International Child Abduction Remedies Act ("ICARA"), 22

---

[1] "The term 'waiver' is best reserved for a litigant's
intentional relinquishment of a known right.  Where a litigant's
action or inaction is deemed to incur the consequence of loss of
a right, or, as here, a defense, the term 'forfeiture' is more
appropriate."  Carroll v. Trump, 88 F.4th 418, 422 n.1 (2d Cir.
2023) (citation omitted).

U.S.C. §§ 9001 et seq.  The existence of ongoing custody
proceedings does not bar a petitioner from pursuing his rights
under the Hague Convention.  The Convention protects a
petitioner's "rights of custody" whether custody proceedings are
ongoing or not.  The Hague Convention provides recourse for the
wrongful removal or retention of a child in violation of these
"rights of custody."  Hague Convention, Art. 3.  See Ozaltin v.
Ozaltin, 708 F.3d 355, 369 (2d Cir. 2013).

It is undisputed in this case that the "rights of custody"
provided by Ukraine's Family Code give both parents the right to
participate in the decision regarding where the children reside
and the right to communicate with the children.  Tereshchenko,
2024 WL 80427, at *4.  And, as the parties agreed at the
hearing, undisputed facts establish that Karimi breached
Tereshchenko's "rights of custody" under Ukraine's Family Code.
Id.  As Karimi admitted at the hearing, she brought the children
to the United States without informing Tereshchenko she was
doing so and never informed him thereafter that she had done so.
Only with the assistance of governmental authorities was
Tereshchenko able to discover where they were.

The fourth legal question that Karimi lists is whether she
was provided with any minimal procedural process that may be
required in Hague Convention proceedings.  For several reasons,
this question does not suggest an issue on which she is likely

9

to prevail on appeal.  Since she never complained about any
defect in the process before or during the January 3 hearing,
this argument has been forfeited.  Moreover, the January 16
submission does not identify any process to which she may be
referring.  Finally, at each step of the proceedings Karimi has
been given notice and an opportunity to be heard.  She has
retained at least ten attorneys to represent her over the course
of these proceedings.  And as the petitioner points out, neither
discovery nor an evidentiary hearing is required by the Hague
Convention, ICARA, or the Due Process Clause of the Fifth
Amendment.  West v. Dobrev, 735 F.3d 921, 929 (10th Cir. 2013),
March v. Levine, 249 F.3d 462, 474-75 (6th Cir. 2001).
Nonetheless, Karimi was afforded an evidentiary hearing on
January 3.

The second factor Karimi must address is whether she will
suffer irreparable harm absent a stay.  Karimi argues that she
and the children will face irreparable harm absent a stay
because she and one of her children are in this country under
the Uniting for Ukraine initiative and may not be able to return
if they leave,[2] the children have a stable life in the United
States, M.T. is receiving medical care here, and the children do
not speak French.  None of these constitutes irreparable harm.

---

[2] K.T. is an American citizen.

Karimi's own connection to the United States is limited.  During the years following her divorce, she traveled widely across the globe and lived for over a year in London.  While M.T. suffers from a hearing problem, fortunately there is no ongoing crisis in her health that requires constant medical treatment.[3]  As the doctor from the Mayo Clinic advised Karimi, M.T. may fly. Tereshchenko has the financial resources to provide medical care for M.T. in Europe, as he has done in the past.

As additional support for her argument that there is irreparable harm, Karimi speculates that Tereshchenko may take the children to Dubai, which is not a signatory to the Hague Convention.  This speculation does not constitute a showing of irreparable harm.  Tereshchenko has participated and continues to participate in court proceedings in Ukraine addressed to the custody of his children.  He is Ukrainian and travels internationally on business.  He has a home in France.  He has offered to help Karimi find accommodations there so that she can continue to have access to her children.  There is no basis to find that Tereshchenko would take the children to Dubai and remain there in order to escape legal process.

---

[3] As reflected in the medical records for M.T. from the Mayo Clinic and Weill Cornell, the doctors have attempted to reassure Karimi about M.T.'s condition.

To the contrary, it is Karimi who has already evaded legal process and disobeyed court orders. She abducted the children as soon as the Odesa Guardianship Decision gave custody to Tereshchenko. She evaded service of the instant petition. She purports to have lost her children's passports. She delayed these proceedings by agreeing to comply with the custody decision by the Odesa District Court, and when she lost in that court, changed counsel representing her here and reneged on her agreement.

As to the third factor, the respondent argues that the petitioner will not be substantially injured by a stay of the January 8 Order, as he is able to visit his children in the United States. This argument fails. He has already experienced substantial injury and will continue to experience it for so long as legal proceedings in this country last. Karimi abducted the children in November 2021. She has resisted Tereshchenko having unsupervised access to the children after he discovered them in New York in 2023. She has essentially deprived her children of their father and deprived Tereshchenko of his children for over two years.

Finally, the respondent argues that a stay of the January 8 Order weighs in favor of the public interest, as appellate review of the Order will ensure "consistent and accurate interpretation" of the Hague Convention. The public interest,

however, weighs very strongly against a stay.  As the Supreme
Court has explained, the Hague Convention generally requires
"the 'prompt return' of a child." Golan v. Saada, 596 U.S. 666,
670 (2022) (citing Hague Convention, Art. 1(a)).  "This
requirement ensures that rights of custody and of access under
the law of one Contracting State are effectively respected in
the other Contracting States." Id. (citing Hague Convention,
Art. 1(b)).  American parents and their children benefit from
this country's participation in and vigorous enforcement of the
Hague Convention.  In 2022, 165 abducted children were returned
to the United States pursuant to the Convention.[4]

---

[4] U.S. Dep't of State, Report on Compliance with the Hague
Convention on the Civil Aspects of International Child
Abduction, April 2023,
https://travel.state.gov/content/dam/NEWIPCAAssets/2023%20ICAPRA
%20Annual%20Report-fv.pdf

## Conclusion

The respondent's January 16 request for a stay is denied except to the following extent.  An administrative stay shall be issued for three days to permit the respondent to seek a stay from the Court of Appeals for the Second Circuit.


Dated:     New York, New York
           January 18, 2024

                                    _____
                                        DENISE COTE
                              United States District Judge